PROFIT v CITIZENS INSURANCE COMPANY OF AMERICA

Docket No. 120094. Submitted November 13, 1990, at Detroit. Decided January 22, 1991, at 9:00 A.M. Leave to appeal sought.

Gail Profit, as guardian and conservator of the estate of George Yancey, Jr., a legally incompetent person, brought an action in the Wayne Circuit Court against Citizens Insurance Company of America after the insurer began to subtract from the work-loss personal protection insurance benefits Yancey was receiving as a result of an automobile accident the amount of social security disability benefits which Yancey was receiving for the same disability. The policy of insurance provided for the non-coordination of the work-loss benefits, but specifically authorized a setoff of governmental benefits. The court, J. Phillip Jourdan, J., granted partial summary disposition in favor of the plaintiff, finding that the defendant was not entitled to set off the social security benefits from the work-loss benefits because the defendant had failed to offer to the plaintiff a policy of no-fault insurance which would not coordinate the social security benefits. The defendant appealed.

The Court of Appeals *held:*

The defendant may not set off the plaintiff's social security disability payments from the work-loss benefits because the defendant failed to offer to the plaintiff a policy of no-fault insurance which would not coordinate the social security benefits.

1. Section 3109(1) of the no-fault act provides that medical benefits provided under the laws of any state or the federal government must be subtracted from personal protection benefits otherwise payable for the same injury. Social security disability benefits serve the same purpose as no-fault medical benefits and, where they are provided as a result of the same accident, are required by § 3109(1) to be subtracted from no-fault benefits otherwise payable. Section 3109a of the no-fault

REFERENCES

Am Jur 2d, Automobile Insurance § 368.

Validity and construction of no-fault insurance plans providing for reduction of benefits otherwise payable by amounts receivable from independent collateral sources. 10 ALR4th 996.

act requires an insurer providing personal protection insurance benefits to offer appropriately reduced premium rates for coordination of benefits with other health and accident coverage of an insured.

2. Social security disability benefits paid by the federal government for injuries suffered in an automobile accident constitute "other health and accident coverage" under § 3109a of the no-fault act. If an insurer fails to offer a policy of no-fault insurance not providing for coordination of social security benefits, it may not subtract from work-loss personal protection insurance benefits social security benefits being received for the same disability.

Affirmed.

1. INSURANCE — NO-FAULT — COORDINATION OF BENEFITS.

Section 3109a of the no-fault insurance act requires an insurer providing personal protection insurance benefits to offer appropriately reduced premium rates for coordination of benefits with an insured's other health and accident coverage (MCL 500.3109a; MSA 24.13109[1]).

2. INSURANCE — NO-FAULT — SOCIAL SECURITY BENEFITS — OTHER HEALTH AND ACCIDENT COVERAGE.

Social security disability benefits provided as a result of the same accident for which personal protection insurance benefits are provided is other health and accident coverage within the meaning of § 3109a (MCL 500.3109a; MSA 24.13109[1]).

3. INSURANCE — NO-FAULT — COORDINATION OF BENEFITS — SOCIAL SECURITY BENEFITS.

An insurer may not subtract from an insured's work-loss personal protection insurance benefits social security disability benefits which the insured is receiving for the same disability where the insurer failed to offer to the insured a policy of no-fault insurance which would not coordinate the social security benefits (MCL 500.3109[1], 500.3109a; MSA 24.13109[1], 24.13109[1]).

*Miller & Lemberg, P.C.* (by *Wayne J. Miller*), for the plaintiff.

*Still, Nemier, Tolari & Landry, P.C.* (by *Rik Mazzeo*), for the defendant.

Before: GRIFFIN, P.J., and SAWYER and BRENNAN, JJ.

GRIFFIN, P.J. In this first-party no-fault case, defendant appeals as on leave granted from an order of partial summary disposition in favor of plaintiff. The issue presented is whether the defendant insurer may subtract from the plaintiff's work-loss personal protection insurance benefits social security disability benefits which the plaintiff is receiving for the same disability where the policy between the parties is labeled "noncoordinated" with regard to wage-loss benefits, but specifically authorizes a setoff of governmental benefits. On the basis of *Tatum v Government Employees Ins Co,* 431 Mich 663; 431 NW2d 391 (1988), we are compelled to hold that, despite the contract and the plain language of MCL 500.3109(1); MSA 24.13109(1), such a setoff is not permissible because the defendant insurer failed to offer to the plaintiff a policy of no-fault insurance which would *not* coordinate this governmental benefit.

I

We begin our analysis with the no-fault statutory provision which the defendant argues not only allows such a setoff, but requires it:

> Benefits provided or required to be provided under the laws of any state or the federal government *shall* be subtracted from the personal protection insurance benefits otherwise payable for the injury. [MCL 500.3109(1); MSA 24.13109(1).]

In *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524; 273 NW2d 829 (1979), app dis 444 US 803 (1979), the Supreme Court held this governmental benefits setoff provision to be constitutional. The Court specifically found a ra-

tional basis for treating governmental benefits differently from private benefits:

> The Legislature's judgment that the recipients of private benefits should be treated differently from the recipients of government benefits is supported by a rational basis and should therefore be sustained. [*Id.* at 537.]

In *Thompson v DAIIE,* 418 Mich 610; 344 NW2d 764 (1984), the Supreme Court held that social security disability benefits serve the same purpose as work-loss personal protection insurance benefits and therefore are to be subtracted from no-fault benefits otherwise payable for an injury. *Thompson* would be dispositive regarding the instant issue were it not for the Supreme Court's subsequent decisions in *LeBlanc v State Farm Mutual Automobile Ins Co,* 410 Mich 173; 301 NW2d 775 (1981), and *Tatum, supra,* which hold that a 1974 amendment of the no-fault act, MCL 500.3109a; MSA 24.13109(1), modifies by implication the governmental benefits set-off provision of § 3109(1).[1]

The legislative history of the 1974 amendment clearly indicates that the Legislature intended to create *greater* coordination, not less. Further, the legislative history of the bill reveals that the additional coordination which the Legislature sought to achieve regarding "other health and accident coverage" was directed to *private,* not governmental, coverages:

*The Apparent Problem to Which the Bill Addresses Itself:*

---

[1] As a general rule of statutory construction, repeals by implication are not favored. See *People v Buckley,* 302 Mich 12, 22; 4 NW2d 448 (1942). If by a reasonable construction two statutes can be reconciled and a purpose found to be served by each, both must stand, and there is no repeal by implication. See *Valentine v Redford Twp Supervisor,* 371 Mich 138; 123 NW2d 227 (1963).

Since the advent of compulsory no-fault automobile insurance last October, auto insurance premiums have not been reduced as some persons had anticipated. *Many believe the average driver is overbuying in regards to accident and medical insurance since no-fault coverage overlaps with portions of the medical coverage offered by the private accident and health insurers and the group plans of Blue Cross and Blue Shield.* Some persons claim Michigan residents should not be required to pay for *this duplicate coverage* and that automobile insurers should offer deductions and exclusions at reduced premiums to those who pay for similar coverage under *other health and accident plans.* Further, many contend this elimination of duplicate coverage by the no-fault insurers would result in a substantial savings to Michigan drivers. [House Insurance Committee Analysis, HB 5724, February 27, 1974. Emphasis added.]

There is no legislative history which indicates that House Bill 5724 (§ 3109a) was intended to effect the mandatory setoff of governmental benefits. Additionally, until the *LeBlanc* decision in 1981, it was assumed by the industry and by the courts that § 3109a had no effect on § 3109(1). In fact, five years after its enactment, the Supreme Court in *O'Donnell, supra* at 550-551, viewed § 3109a as being limited to private insurance coverages:

Section 3109(1) did not attempt to address the problem of overlapping no-fault and *private health or accident insurance benefits.* Soon after the No-fault Act was passed by the Legislature, however, an attempt was made to fine-tune the set-off provisions so that *this kind of duplication could be reduced* while still permitting persons with needs exceeding the benefits provided by no-fault insurance to obtain the extra coverage they required. The Legislature enacted § 3109a which states:

"An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household."

*Although the Legislature did not choose to make this set-off mandatory, as it had done with § 3109(1)'s government benefit set-off,* this distinction is justified by the perceived necessity of making it possible for persons with greater needs to obtain the coverage they require and pay reduced rates on the no-fault insurance through deductibles and exclusions approved by the Commissioner. That some persons can still slip through the colander of § 3109a and receive additional benefits does not mean the statute is unconstitutional. Mathematical precision is neither possible nor required.

*Section 3109a promotes the valid legislative objective of reducing duplicative benefits;* the means chosen is rationally related to that end; and the distinctions drawn are supported by a rational basis. This statute is also constitutional. [Emphasis added.]

See also *Nyquist v Aetna Ins Co,* 84 Mich App 589; 269 NW2d 687 (1978), aff'd 404 Mich 817 (1979).

Shortly after the enactment of § 3109a, the Commissioner of Insurance issued Bulletin AD 74-2, which provided the following guidelines for the implementation of the new law:

Attached are guidelines to be followed when filing your company's coordination of benefits program.

\* \* \*

Basically, the act [1974 PA 72] requires that automobile insurers must offer excess no-fault benefits to allow individuals who have health coverage which duplicates coverage under no-fault to eliminate the duplication.

\* \* \*

The act applies to commercial and personal automobile insurance, but to the extent commercial rates have already been reduced to take account of workmen's compensation benefits or other statutorily required benefits, no further reductions would be required. . . . Note that coordination with statutory programs is defined by statute. For your information Medicare is a primary health program. [Insurance Department Bulletin AD 74-2 (issued as ED-1), April 15, 1974, quoted in *LeBlanc, supra* at 219 (LEVIN, J., dissenting).]

The clear import of the Insurance Bureau memorandum was that the statutorily mandated governmental benefits set-off provision of § 3109(1) was unaffected by the enactment of § 3109a. This construction by the Commissioner of Insurance is particularly significant in view of the fact that under § 3109a "deductibles and exclusions reasonably related to other health and accident coverage on the insured . . . *shall* be subject to *prior approval* by the commissioner." (Emphasis added.) Since the commissioner was taking the position that mandatory coordination of governmental benefits under § 3109(1) continued despite § 3109a, an insurance carrier such as Citizens was neither compelled *nor authorized* to offer a noncoordinated policy which permitted duplication of governmental benefits.

II

This Court finds the above arguments to be

strong and persuasive. Nevertheless, the defendant's position was rejected by the majority of the Supreme Court in *LeBlanc,* and by a unanimous Supreme Court in *Tatum.* We are unable to rationally distinguish the social security disability benefits at issue from the federal military medical benefits addressed in *Tatum.* The rationale of *Tatum* appears to be applicable and therefore is applied.

"Were we writing on a clean slate,"[2] we would decide in defendant's favor. Duplication of governmental benefits is repugnant to the purposes and objectives of the no-fault act and to the plain language of § 3109(1). In enacting the 1974 amendment, § 3109a, the Legislature intended to encourage and promote greater *coordination,* not greater *duplication.*

We reluctantly follow *Tatum* and hold that, despite the plain language of § 3109(1), defendant may not setoff plaintiff's social security disability payments from plaintiff's work-loss personal protection insurance benefits because defendant failed to offer to the plaintiff a policy of no-fault insurance which would *not* coordinate this governmental benefit.

Affirmed.

---

[2] The Supreme Court in *Tatum* included the following intriguing footnote reflecting upon the stare decisis effect of *LeBlanc:*

> Were we writing on a clean slate, we might well conclude that only those benefits that are health and accident benefits directly financed by the insured are within the coverage of § 3109a. See separate opinion of RYAN, J., in *LeBlanc.* We are not. Moreover, although we are not bound to follow prior precedent if convinced it is incorrect, we are not convinced that *LeBlanc* was wrongly decided. [*Tatum, supra* at 670, n 5.]

The use of the double negative by the Supreme Court ("not convinced that *LeBlanc* was *wrongly* decided") casts doubt on the positive proposition whether the court *is* convinced that *LeBlanc* was *correctly* decided.