MICHIGAN EDUCATIONAL EMPLOYEES MUTUAL
INSURANCE COMPANY v MORRIS

AUTO-OWNERS INSURANCE COMPANY v PERRY

Docket Nos. 108600, 109351. Argued November 10, 1998 (Calendar Nos. 9-
10). Decided June 29, 1999.

Michigan Educational Employees Mutual Insurance Company brought
an action in the Van Buren Circuit Court against Richard Morris,
conservator of the estate of Celia A. Wooten, seeking reimburse-
ment of an amount equal to social security disability benefits paid
to Ms. Wooten during the time MEEMIC also paid her work loss bene-
fits. The trial court, Meyer Warshawsky, J., granted summary dispo-
sition for MEEMIC, finding that *Profit v Citizens Ins Co of America*,
444 Mich 281 (1993), mandated that MEEMIC be reimbursed the
amount Ms. Wooten was overpaid, but, on the basis of the doctrine
of laches, MCL 600.5815; MSA 27A.5815, limited to the amount of
overpayment Ms. Wooten received in the third and final year in
which it paid work loss benefits. The Court of Appeals, MICHAEL J.
KELLY, P.J., and K. W. SCHMIDT, J. (O'CONNELL, J., concurring), affirmed
the finding of liability, in an unpublished opinion per curiam, but
reversed with respect to the limitation of the reimbursement, and
remanded to the trial court for modification of the judgment to
reflect MEEMIC's right to full reimbursement of the social security
disability benefit setoff amount (Docket No. 186256). The defend-
ant appeals.

Auto-Owners Insurance Company brought an action in the Lapeer Cir-
cuit Court against Betty Perry, seeking reimbursement of overpay-
ment of no-fault survivors' loss benefits as a result of the additional
receipt by the defendant of social security survivors' loss benefits.
The court, Nick O. Holowka, J., denied Auto-Owners' motion for
summary disposition. The Court of Appeals, SAAD, P.J., and GRIFFIN
and M. H. CHERRY, JJ., reversed, holding that, on the basis of *Profit*,
Auto-Owners was entitled to full reimbursement of the amount
overpaid to the survivors. 223 Mich App 1 (1997) (Docket No.
186678). The defendant appeals.

The cases were combined to determine if *Profit* should be
applied retroactively.

In a unanimous opinion by Justice BRICKLEY, the Supreme Court *held*:

The decision in *Profit* was not unforeseeable, and thus is to be applied retroactively to both defendants. However, because the plaintiffs' right to recover overpayments is equitable in nature, the trial courts must consider all factors in determining whether the plaintiffs are entitled to reimbursement.

1. In deciding whether a judicial decision should receive full retroactive application, the Supreme Court must determine whether the decision establishes a new principle of law, either by overruling clear past precedent on which the parties have relied or by deciding an issue of first impression, and, thus the result would have been unforeseeable to the parties. If the decision does not announce a new principle of law, then full retroactivity is favored. *Profit* was not an unforeseeable decision that had the effect of changing the law, nor did it establish a new rule of law. Rather, it reaffirmed existing law that was misinterpreted by the Court of Appeals. This misinterpretation was in direct conflict with the plain language of the statute, the legislative intent, and two prior decisions of the Supreme Court. Therefore, the Supreme Court's subsequent overruling of the Court of Appeals is to be given retroactive application in these cases.

2. An essential element of a quasi-contractual obligation, upon which recovery may be had, is the receipt of a benefit by a defendant from a plaintiff, which it is inequitable to retain. A plaintiff has the duty of establishing the nature of the transaction and the character of the liability arising from it as a prerequisite to the right to recover. If the recipient of such a benefit has detrimentally relied on it, the plaintiff would be estopped from demanding reimbursement. The burden of establishing detrimental reliance is on the party opposing the restitution claim.

3. It is, thus, clear that defendants received payments to which they are not entitled, and remand is required for evidentiary hearings and determinations whether the plaintiffs are equitably entitled to any reimbursement of the overpayments under a theory of unjust enrichment, and, if so, the amounts of reimbursement due. In making this determination, the trial court should consider all relevant circumstances, including the timing of the defendants' notice to the plaintiffs that they were receiving social security benefits, and the timing of the plaintiffs' notice to the defendants that they were asserting a right to set off the amount of the social security payments. The court should also bear in mind the relevant legal background. Relevant considerations are: that the no-fault act and case law encourage prompt payment of insurance benefits even

when there is some doubt about the insured's entitlement to the payment, and that under MCR 7.215(C)(2), the Court of Appeals decision in *Profit* was binding authority from the date it was issued until the Supreme Court reversed it. Finally, the court should consider any detrimental reliance claim made by the defendants.

Reversed and remanded.

*Jon J. Schrotenboer* and *Mark D. Goudy* for plaintiff-appellee Michigan Educational Employees Mutual Insurance Company.

*Anselmi, Mierzejewski & Ledwidge, P.C.* (by *Joseph S. Mierzejewski*), for plaintiff-appellee Auto-Owners Insurance Company.

*Field & Field, P.C.* (by *Samuel T. Field*), for defendant-appellant Richard Morris.

*Michael J. Kelly* for defendant-appellant Perry.

BRICKLEY, J. We granted leave in these cases to determine whether this Court's decision in *Profit v Citizens Ins Co of America*, 444 Mich 281; 506 NW2d 514 (1993), is retroactively applicable, so that plaintiff insurance companies in the present cases can obtain reimbursement from the present defendants for the amount of no-fault personal protection insurance benefits that were overpaid because social security benefit payments were not offset. We answer this first question in the affirmative. Additionally, we consider whether plaintiff insurance companies have a common-law basis for reimbursement of the overpayments. While we conclude that such a right exists, it is an equitable right, and plaintiffs are only entitled to reimbursement if, in light of all the circumstances, reimbursement would be equitable to defendants. Finally, we consider whether the doctrine of laches bars plaintiff Michigan Educational Employees

Mutual Insurance Company's (MEEMIC) attempt to recover reimbursement of the full amount of the overpayment. We conclude that the doctrine of laches is inapplicable under the circumstances of this case.

Before turning to a discussion of the issues, we will examine the facts and the procedural history of these cases.

## I. FACTS AND PROCEEDINGS

### A. *MICHIGAN EDUCATIONAL EMPLOYEES MUTUAL INS CO v MORRIS*

On December 12, 1988, Celia Wooten was injured in a motor vehicle accident that left her totally disabled. Ms. Wooten is now under the conservatorship of Richard Morris, her brother and legal representative and the defendant in this action.

At the time of the accident, Ms. Wooten's automobile insurance provider was plaintiff Michigan Educational Employees Mutual Insurance Company. As Ms. Wooten's no-fault insurer, MEEMIC was responsible for paying Ms. Wooten's income replacement benefits for work she would have performed during the first three years after the accident. MCL 500.3107; MSA 24.13107.[1] MEEMIC immediately began paying work

---

[1] MCL 500.3107; MSA 24.13107 provides in pertinent part:

(1) Except as provided in subsection (2), personal protection insurance benefits are payable for the following:

\*     \*     \*

(b) Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured.

loss benefits in the amount of $2,670 a month, the maximum amount payable under the statute.

On June 20, 1990, the Social Security Administration approved Ms. Wooten's claim for social security disability benefits and provided that her benefits be retroactive to June, 1989. MEEMIC was informed of this award on August 16, 1990. MEEMIC continued to pay full work loss benefits without coordinating the social security award.

On January 22, 1991, the Court of Appeals, *Profit v Citizens Ins Co of America,* 187 Mich App 55; 466 NW2d 354 (1991), held that social security benefits could not be subtracted from work loss benefits. MCL 500.3109(1); MSA 24.13109(1). Section 3109(1) provides as follows:

> Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury.

Before the holding in *Profit,* this Court had twice held that social security benefits were to be offset against no-fault personal protection insurance benefits under § 3109(1). See *O'Donnell v State Farm Mut Automobile Ins Co,* 404 Mich 524; 273 NW2d 829 (1979) (social security benefits payable to a deceased worker's survivors are subject to offset), and *Thompson v Detroit Automobile Inter-Ins Exchange,* 418 Mich 610; 344 NW2d 764 (1984) (social security disability benefits payable to dependents of injured person for income lost as the result of an automobile accident are subject to offset).

On June 12, 1991, MEEMIC wrote to Ms. Wooten's conservator informing him that MEEMIC intended to

offset Ms. Wooten's social security benefits and demanding reimbursement of the amount of social security benefits that had already been received. Ms. Wooten's counsel, relying on the Court of Appeals decision in *Profit*, responded with a refusal to reimburse MEEMIC and demanded that MEEMIC continue to pay the work loss benefits in full. MEEMIC complied with the demand and paid the remainder of the work loss benefits without setoff.

On September 29, 1993, this Court reversed *Profit* and announced that a no-fault insurer is entitled to deduct social security disability benefits from work loss benefits. 444 Mich 281. On October 19, 1993, MEEMIC wrote to Ms. Wooten's attorney, demanding reimbursement for the amount of the social security disability benefits. Ms. Wooten did not make the reimbursement, and MEEMIC brought this action.

The trial court concluded that a six-year period of limitation was applicable, and, thus, the claim was not barred. The court then granted MEEMIC's motion for summary disposition on the basis of an unjust enrichment or restitution theory. The court found that *Profit* mandated that MEEMIC be reimbursed the amount Ms. Wooten was overpaid as a result of receiving social security benefits. The court, however, limited the amount of the reimbursement to the amount of overpayment Ms. Wooten received in the third and final year in which work loss benefits were paid by MEEMIC. The court based this limitation on the doctrine of laches as set for in MCL 600.5815; MSA 27A.5815.[2]

---

[2] MCL 600.5815; MSA 27A.5815 provides:

Both parties appealed the trial court's decision. The Court of Appeals affirmed the trial court's finding of liability, but reversed with respect to the one-year limitation on the reimbursement. The Court of Appeals remanded to the trial court and ordered that the judgment be modified to reflect MEEMIC's right to full reimbursement of the social security disability benefit setoff amount.

On appeal to this Court, Ms. Wooten argues, through her conservator, that the Court of Appeals erred in granting unlimited retroactive application to *Profit*, 444 Mich 281. Ms. Wooten also argues that under *Adams v Auto Club Ins Ass'n*, 154 Mich App 186; 397 NW2d 262 (1986), plaintiff MEEMIC has failed to demonstrate that it made the payments under a "mistake of fact," which is a necessary element in a common-law case where an insurer attempts to obtain a judgment against an insured and the insured detrimentally relied on the amount of the work loss benefits paid being correct. Finally, Ms. Wooten argues that the Court Appeals erred in not considering the doctrine of laches in granting MEEMIC the right to full reimbursement of the social security disability benefits.

### B. *AUTO-OWNERS INSURANCE CO v PERRY*

Michael Campbell died on October 3, 1991, as a result of injuries suffered in an automobile accident. Decedent's ex-wife, Betty Perry, filed a claim with

---

The prescribed period of limitations shall apply equally to all actions whether equitable or legal relief is sought. The equitable doctrine of laches shall also apply in actions where equitable relief is sought.

Auto-Owners Insurance Company for survivors' loss benefits for hers and Mr. Campbell's three children. Mr. Campbell's survivors were also paid social security survivors' loss benefits. Pursuant to MCL 500.3108; MSA 24.13108,[3] Auto-Owners paid the survivors' loss benefits to Mr. Campbell's surviving children. After Auto-Owners had begun making payments, it informed the claimants that setoff adjustments might be necessary, considering the receipt of duplicate payments of survivors' loss benefits from the Social Security Administration.[4]

---

[3] MCL 500.3108(1); MSA 24.13108(1) provides in pertinent part:

Except as provided in subsection (2), personal protection insurance benefits are payable for a survivor's loss which consists of a loss, after the date on which the deceased died, of contributions of tangible things of economic value, not including services, that dependents of the deceased at the time of the deceased's death would have received for support during their dependency from the deceased if the deceased had not suffered the accidental bodily injury causing death and expenses, not exceeding $20.00 per day, reasonably incurred by these dependents during their dependency and after the date on which the deceased died in obtaining ordinary and necessary services in lieu of those that the deceased would have performed for their benefit if the deceased had not suffered the injury causing death.

[4] In a letter sent to defendant's attorney, dated September 22, 1992, Auto-Owners stated:

It is the position of Auto-Owners that Auto-Owners is entitled to offset Social Security Benefits received by Mr. Campbell's children pursuant to MCLA 500.3109(1) [MSA 24.13109(1)], from No-Fault Benefits owed. Auto-Owners has not and is not currently offsetting No-Fault Benefits as a result of a Michigan Court of Appeals decision in *Profit v Citizens*, 187 Michigan App 55 (1991), (leave granted June 1, 1992 [439 Mich 1019]).

In the event that the Supreme Court reverses the Court of Appeals holding in *Profit*, Auto-Owners claims a lien for the amount that Auto-Owners would have been entitled to offset, and Auto-Owners intends to seek reimbursement for that offset.

This Court released *Profit* on September 29, 1993. The opinion reversed the Court of Appeals decision that had prompted Auto-Owners to refrain from setting off the social security benefits. We held that social security survivors' benefits are to be subtracted from no-fault benefits payable for an automobile injury. Auto-Owners requested that Ms. Perry reimburse it for the overpayment, and, when Ms. Perry failed to reimburse, Auto-Owners filed the present lawsuit.

Auto-Owners subsequently moved for summary disposition. When the trial court denied the motion, Auto-Owners appealed. The Court of Appeals reversed the judgment of the trial court and held that Auto-Owners was entitled to set off the amount of social security survivor payments from the amount Auto-Owners had paid defendant in survivors' loss benefits. It also held that Auto-Owners was entitled to full reimbursement of the amount that was overpaid to the survivors.[5]

Defendant, Ms. Perry, argues that this Court's decision in *Profit* announced a new rule or decided an issue of first impression and, therefore, should not be applied retroactively. Additionally, Ms. Perry argues that Auto-Owners brought its complaint under the sole theory of mistake and that both the trial court and the Court of Appeals found that Auto-Owners had not met its burden of proof under a theory of mistake. Therefore, Ms. Perry contends that the Court of Appeals erroneously granted Auto-Owners relief.

We combine these cases to determine if our decision in *Profit* should be applied retroactively so that

---

[5] 223 Mich App 1; 566 NW2d 10 (1997).

plaintiff insurance companies in the present cases can obtain reimbursement for the amounts they overpaid in no-fault personal protection insurance benefits because they did not subtract social security benefit payments from the amount paid in no-fault personal protection insurance benefits.

## II. RETROACTIVE APPLICATION OF *PROFIT*

In these companion cases, both defendants argue that this Court's decision in *Profit* should be applied prospectively rather than retroactively. "[T]he general rule is that judicial decisions are to be given complete retroactive effect. . . . [C]omplete prospective application has generally been limited to decisions which overrule clear and uncontradicted case law." *Hyde v Univ of Michigan Bd of Regents*, 426 Mich 223, 240; 393 NW2d 847 (1986).

In *Chevron Oil Co v Huson*, 404 US 97, 106-107; 92 S Ct 349; 30 L Ed 2d 296 (1971), the United States Supreme Court stated:

> In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly fore-shadowed . . . . Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." . . . Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample

basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." [Citations omitted.][6]

This Court has also applied the three-part test set forth in *Chevron* and *Linkletter v Walker*, 381 US 618; 85 S Ct 1731; 14 L Ed 2d 601 (1965). In *Riley v Northland Geriatric Ctr (After Remand)*, 431 Mich 632, 644-646; 433 NW2d 787 (1988), we stated:

> Courts have acknowledged that resolution of the retrospective-prospective issue ultimately turns on considerations of fairness and public policy. . . . While fairness is a goal, certain rules or principles have evolved which provide guidance in resolving the retroactive-prospective dilemma . . . . [T]he Court weighed (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice.

In *Tebo v Havlik*, 418 Mich 350, 360; 343 NW2d 181 (1984), this Court stated that "[a]ppreciation of the effect a change in settled law can have has led this Court to favor only limited retroactivity when overruling prior law." Therefore, the first criterion that must be determined in deciding whether a judicial decision should receive full retroactive application is whether that decision is establishing a new principle of law, either by overruling clear past precedent on which the parties have relied or by deciding an issue of first impression where the result would have been unforeseeable to the parties. If the decision does not

---

[6] The United States Supreme Court initially adopted this three-part test in *Linkletter v Walker*, 381 US 618; 85 S Ct 1731; 14 L Ed 2d 601 (1965). *Linkletter* was a criminal case. The Court's application of the test in *Chevron* was in regard to a civil matter.

announce a new principle of law, then full retroactivity is favored.

> Before any question of the retroactive application of an appellate decision arises, it must be clear that the decision announces a new principle of law. A rule of law is new for purposes of resolving the question of its retroactive application . . . either when an established precedent is overruled or when an issue of first impression is decided which was not adumbrated by any earlier appellate decision. [*People v Phillips*, 416 Mich 63, 68; 330 NW2d 366 (1982).]

In *People v Doyle*, 451 Mich 93; 545 NW2d 627 (1996), this Court held that the holding in *People v Bewersdorf*, 438 Mich 55; 475 NW2d 231 (1991), applied retroactively to the defendant. *Bewersdorf* held that the habitual offender act[7] was applicable to third and subsequent convictions for operating a motor vehicle while under the influence of intoxicating liquor (OUIL).[8] In *Bewersdorf*, this Court, for the first time, interpreted the relationship between the habitual offender act and the Motor Vehicle Code and found that there was no conflict between the two statutes. This decision overruled *People v Tucker*, 177 Mich App 174; 441 NW2d 59 (1989), in which the Court of Appeals held that a person who had two or more OUIL-3d convictions could not be charged as an habitual offender. In deciding to apply *Bewersdorf* retroactively in *Doyle*, this Court stated:

> Our decision is based on our belief that *Bewersdorf* was not an unforeseeable decision that had the effect of "chang-

---

[7] MCL 769.10 *et seq.*; MSA 18.1082 *et seq.*

[8] MCL 257.625(6); MSA 9.2325(6), as amended by 1987 PA 109, MCL 257.902; MSA 9.2602. The current provision is MCL 257.625(7)(d); MSA 9.2325(7)(d), as amended by 1996 PA 491.

ing" the law. Therefore, *Bewersdorf* did not establish a "new" rule of law in Michigan jurisprudence. [*Id.* at 101.]

Our decision in *Profit* was not an unforeseeable decision that had the effect of "changing" the law. It is clear from the language of *Profit*, that this Court was not creating a new rule of law. The opinion concludes as follows:

> In so holding, we follow *O'Donnell v State Farm Mutual Automobile Ins Co*, 404 Mich 524; 273 NW2d 829 (1979), in which this Court held that social security survivors' benefits are required to be subtracted, *Thompson v Detroit Automobile Inter-Insurance Exchange*, 418 Mich 610; 344 NW2d 764 (1984), in which this Court held that social security disability benefits paid to dependents of an injured wage earner are required to be subtracted, and *Mathis v Interstate Motor Freight System*, 408 Mich 164; 289 NW2d 708 (1980), in which this Court held that workers' compensation benefits are required to be subtracted from no-fault work loss benefits otherwise payable for an automobile injury. [*Profit*, 444 Mich 288.]

Therefore, *Profit* simply reaffirmed the existing law, which was misinterpreted by the Court of Appeals. Even a reading of the Court of Appeals opinion in *Profit* supports the rationale that reversal of that Court's holding would not be unexpected or unforeseeable. In deciding that the defendant may not set off plaintiff's social security disability payments, the Court of Appeals opined:

> "Were we writing on a clean slate," we would decide in defendant's favor. Duplication of governmental benefits is repugnant to the purposes and objectives of the no-fault act and to the plain language of § 3109(1). In enacting the 1974 amendment, § 3109a, the Legislature intended to encourage and promote greater *coordination*, not greater *duplication*.

We reluctantly follow *Tatum* [*v Government Employees Ins Co*, 431 Mich 663; 431 NW2d 391 (1988)] and hold that, despite the plain language of § 3109(1), defendant may not setoff plaintiff's social security disability payments from plaintiff's work-loss personal protection insurance benefits because defendant failed to offer to the plaintiff a policy of no-fault insurance which would not [sic] coordinate this governmental benefit. [187 Mich App 62 (emphasis in original).][9]

In *Bewersdorf*, this Court addressed a question of statutory interpretation that had not been previously addressed and gave effect to an unambiguous statute, thereby, implementing the intent of the Legislature. In deciding to apply the *Bewersdorf* holding retroactively, this Court in *Doyle* stated that, in light of the clear language of the statute as enacted by the Legislature,

it cannot be maintained that our *Bewersdorf* decision was "unforeseeable." We did not change the law. We gave effect to an unambiguous statute, implementing the intent of the Legislature. Thus, the law was as we interpreted it to be, because of the nature of the unambiguous statutory language. [*Id.* at 104.]

---

[9] In *Profit*, this Court addressed the Court of Appeals reliance on *Tatum* when we stated:

There is no need in the instant case to reconsider *Tatum*, nor would it be appropriate to do so:

- Social security disability benefits are not medical benefits and do not "serve the same purpose as Blue Cross-Blue Shield and Medicare benefits";
- Yancey was not an employee of the federal government;
- For reasons set forth in part III, social security disability benefits are benefits provided under federal law, within the meaning of § 3109(1), and are not "other health and accident coverage" within the meaning of § 3109a. [444 Mich 286-287.]

As in *Bewersdorf*, the language of the disputed statute in the present cases is unambiguous. MCL 500.3109(1); MSA 24.13109(1) provides as follows:

> Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury.

As noted above, even the Court of Appeals panel deciding *Profit* found that "[d]uplication of governmental benefits is repugnant to the purposes and objectives of the no-fault act and to the plain language of § 3109(1)." 187 Mich App 62.

In addition to the unambiguous language of the statute, the Legislature's intent when enacting the statute supports this Court's reasoning in *Profit*. As this Court stated in *Tebo v Havlik, supra* at 366-367:

> The no-fault insurance act was a radical restructuring of the rights and liabilities of motorists. Through comprehensive action, the Legislature sought to accomplish the goal of providing an equitable and prompt method of redressing injuries in a way which made the mandatory insurance coverage affordable to all motorists. . . . The obvious purpose of the setoff provisions of the act is to eliminate duplicate benefits. The act "reduces the amount that the insurance companies must pay out, making it possible for them to reduce the amount that they must charge, and it does so only in those situations where benefits are redundant." *O'Donnell v State Farm Mutual Automobile Ins Co*, 404 Mich 524, 546; 273 NW2d 829 (1979). In effect, the Legislature made a trade-off. Those who were required to participate in the no-fault scheme gave up the possibility of redundant recoveries, but they were intended to receive the benefit of lower insurance rates.

Before the Court of Appeals decision in *Profit*, this Court had twice determined that social security benefits were "[b]enefits provided or required to be provided under the laws of" the federal government and shall be subtracted from the no-fault personal protection insurance benefits otherwise payable for an automobile injury. See *O'Donnell* and *Thompson, supra.*

Only if this Court's decision can be said to be "unexpected" or "indefensible" in light of the law in place at the time of the acts in question would there be a question about whether to afford the decision complete retroactivity. *People v Sexton*, 458 Mich 43, 64; 580 NW2d 204 (1998). It can hardly be considered "unexpected" or "indefensible" that this Court would reverse a Court of Appeals decision that was contrary to the clear and unambiguous language of the statute, the legislative intent behind the statute, and two prior opinions of this Court.

Defendants argue and we recognize that a published decision of the Court of Appeals is controlling precedent for trial courts. MCR 7.215(C)(2).[10] Defendants argue that because the Court of Appeals holding in *Profit* was precedent for the trial courts, it was the then-existing law at the time the disputed no-fault personal protection insurance benefits were paid. However, this argument fails to recognize the hierarchal nature of the court system, as well as the clear

---

[10] MCR 7.215(C)(2) provides:

A published opinion of the Court of Appeals has precedential effect under the rule of stare decisis. The filing of an application for leave to appeal to the Supreme Court or a Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals.

and unambiguous language of the statute. In *Doyle*, this Court stated:

> Additionally, the Court stated that its *Tucker* decision was "the law" on the date of defendant's offense and that retroactive application of *Bewersdorf* "would [therefore] undermine the rule of law in this state."
>
> This approach taken by the Court of Appeals overlooks the hierarchal nature of the court system, as well as the special rule of the Legislature when it provides a clear statutory enactment. In the view of the Court of Appeals majority, the "rule of law" in this state is more offended by the retroactive application of a controlling decision by this Court, than it is by a continued application of an erroneous and overruled decision by the Court of Appeals. [*Id.* at 108-109 (citations omitted).]

Therefore, MCL 500.3109(1); MSA 24.13109(1), by its plain language applies as to whether social security benefits are to be subtracted from the no-fault personal protection insurance benefits paid by the plaintiffs to the defendants.

In *Doyle, supra* at 111, this Court, quoting *Ross v Oregon*, 227 US 150, 163; 33 S Ct 220; 57 L Ed 458 (1913), stated:

> "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation, on the other hand, looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power."

In *Doyle*, this Court found that the Court in *Bewersdorf* fulfilled its judicial role and gave effect to valid laws that existed at the time the defendant committed the offense at issue regardless of the fact that

the Court of Appeals had previously and erroneously interpreted the disputed statute. So too in the present cases, as in *Profit*, the Court of Appeals misinterpreted the statute as not requiring that social security benefits be subtracted from no-fault personal protection insurance benefits. This decision was in direct conflict with the plain language of the statute, the intent of the Legislature in enacting the statute, and two previous decisions by this Court holding that social security benefits are to be subtracted from no-fault personal protection insurance benefits. In *Profit*, this Court fulfilled its judicial role and gave effect to valid laws that existed before and during the time plaintiffs made the no-fault personal protection insurance payments to defendants. The Court of Appeals misinterpretation of the statute "served to thwart the legislative intent and the mandated result." *Doyle, supra* at 111.

This Court's decision in *Profit* was not an unforeseeable decision that had the effect of changing the law, nor did it establish a new rule of law. Rather, it reaffirmed the existing law that was misinterpreted by the Court of Appeals. Accordingly, we hold that the Court of Appeals misinterpreted the law as it existed at the time. This misinterpretation was in direct conflict with the plain language of the statute, the legislative intent, and two prior decisions of this Court. Therefore, this Court's subsequent overruling of the Court of Appeals is to be given retroactive application in the present cases.

### III. RIGHT TO REIMBURSEMENT

Because this Court's *Profit* decision applies retroactively, it is clear that defendants received payments

to which they are not entitled. However, whether plaintiffs are entitled to reimbursement of these overpayments is a separate question.

This Court has long recognized the equitable right of restitution when a person has been unjustly enriched at the expense of another.

> The right to bring this action for money exists whenever a person, natural or artificial, has in his or its possession *money* which in equity and good conscience belongs to the plaintiff, and *neither express promise nor privity between the parties* is essential. [*Hoyt v Paw Paw Grape Juice Co*, 158 Mich 619, 626; 123 NW 529 (1909) (emphasis in original).]

This Court has also previously held:

> Even though no contract may exist between two parties, under the equitable doctrine of unjust enrichment, "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." Restatement Restitution, § 1, p 12. The remedy is one by which "the law sometimes indulges in the fiction of a quasi or constructive contract, with an implied obligation to pay for benefits received" to ensure that " 'exact justice' " is obtained. [*Kammer Asphalt Paving Co, Inc v East China Twp Schools*, 443 Mich 176, 185-186; 504 NW2d 635 (1993), quoting *Detroit v Highland Park*, 326 Mich 78, 100; 39 NW2d 325 (1949), quoting *Cascaden v Magryta*, 247 Mich 267, 270; 225 NW 511 (1929).]

"The essential elements of a quasi contractual obligation, upon which recovery may be had, are the receipt of a benefit by a defendant from a plaintiff, which benefit it is inequitable that the defendant retain." *Moll v Wayne Co*, 332 Mich 274, 278-279; 50 NW2d 881 (1952). Plaintiff has "the duty of establishing the nature of the transaction and the character of the lia-

bility arising therefrom as a prerequisite to his right to recover at all . . . ." *Id.* at 280. If the recipient of such a benefit has relied to his detriment on it, the plaintiff would be estopped from demanding reimbursement. *Leute v Bird*, 277 Mich 27, 31; 268 NW 799 (1936); *Porter v Goudzwaard*, 162 Mich 158, 161-162; 127 NW 295 (1910). The burden of establishing detrimental reliance is on the party opposing the restitution claim. See *Adams*, 154 Mich App 194.[11]

Here, we remand both cases for evidentiary hearings and determinations whether plaintiffs are equitably entitled to any reimbursement of the overpayments under a theory of unjust enrichment, and, if so, the amounts of reimbursement due. In making this equitable determination, the trial court should consider all relevant circumstances. Those circumstances include: (1) the timing of defendants' notice to plaintiffs that they were receiving social security benefits, and (2) the timing of plaintiffs' notice to defendants that they were asserting a right to set off the amount of the social security payments. The trial court should also bear in mind the relevant legal background. Among the relevant considerations in this vein are: (1) that the no-fault act and court decisions encourage prompt payment of insurance benefits even when there is some doubt about the insured's

---

[11] We are helped in reaching this conclusion by reviewing decisions from the courts of our sister states. These courts have held that, in order to defeat an action for restitution because of detrimental reliance, the burden is on the payee to establish that the payee's change in circumstances was detrimental to the payee, material and irrevocable, and of a sort that the payee cannot be placed in the status quo. See *Messersmith v G T Murray & Co*, 667 P2d 655 (Wyo, 1983); *Jonklaas v Silverman*, 117 RI 691; 370 A2d 1277 (1977); *Westamerica Securities, Inc v Cornelius*, 214 Kan 301; 520 P2d 1262 (1974).

entitlement to the payment,[12] and (2) that under MCR 7.215(C)(2), the Court of Appeals decision in *Profit* was binding authority from the date it was issued until this Court reversed it. Finally, in determining plaintiffs' entitlement to reimbursement, the trial court should consider any detrimental reliance claim made by defendants.

IV. DOCTRINE OF LACHES

Defendant Wooten argues that the trial court did not abuse its discretion by applying the doctrine of laches to limit MEEMIC's reimbursement. The doctrine of laches is concerned with unreasonable delay, and it generally acts to bar a claim entirely, in much the same way as a statute of limitation. Here, because MEEMIC filed this case within the six-year period of limitation, any delay in the filing of the complaint was presumptively reasonable, and the doctrine of laches is simply inapplicable. As noted above, we agree with defendant that equity requires the trial court to consider whether MEEMIC notified defendant that it would seek reimbursement, and whether such notification was unreasonably delayed. However, the failure or delay in notification does not act to shorten the period of limitation. Instead, it simply acts to shift the

---

[12] For example, the prevailing party in a no-fault action may recover attorney fees if the insurer acted unreasonably in delaying or refusing payment of the claim. MCL 500.3148(1); MSA 24.13148(1). Because one purpose of the no-fault act is to insure prompt payment for economic losses, *Shavers v Attorney General*, 65 Mich App 355, 369; 237 NW2d 325 (1975), aff'd in part 402 Mich 554; 267 NW2d 72 (1978), " 'it would defeat the purpose of no-fault insurance if we were to allow an insurance company to delay payments in its hope that it was entitled to reimbursement.' " *Joiner v Michigan Mut Ins Co*, 161 Mich App 285, 293; 409 NW2d 808 (1987), quoting *Cannell v Riverside Ins Co*, 147 Mich App 699, 706; 383 NW2d 89 (1985).

burden onto plaintiffs to show that reimbursement is equitable.

## CONCLUSION

We hold that this Court's decision in *Profit* was not unforeseeable. Therefore, it is to be applied retroactively to both defendants in the present cases. However, because plaintiffs' only right to recover overpayments is equitable in nature, the trial courts must consider all factors in determining whether plaintiffs are entitled to reimbursement.

Accordingly, the Court of Appeals decisions are reversed, and these cases are remanded to the respective trial courts for further proceedings consistent with this opinion.

WEAVER, C.J., and CAVANAGH, KELLY, TAYLOR, CORRIGAN, and YOUNG, JJ., concurred with BRICKLEY, J.