HALL v NOVIK

Docket No. 232260. Submitted April 8, 2003, at Detroit. Decided April 29, 2003, at 9:05 A.M.

In 1991, Linda M. Hall, now known as Linda M. Thomas, brought a paternity action in the Oakland Circuit Court, alleging that Michael Novik was the father of her child born in December 1990. The parties reached a nonmodifiable settlement agreement, through which Novik agreed to make payments for the child's support and education and to provide health-care insurance, but did not acknowledge paternity. The court, Deborah Tyner, J., entered an order approving the agreement pursuant to MCL 722.713. The plaintiff thereafter sought modification of the support order. The trial court determined that the matter was controlled by *Dones v Thomas*, 210 Mich App 674 (1995), which held MCL 722.713 unconstitutional, and that the agreement could be modified. The court entered an order increasing child support and requiring the parties to submit to testing to determine the child's biological father. Subsequent testing determined the defendant to be the child's biological father. The defendant thereafter filed a motion seeking reinstatement of the original support order and reimbursement of payments in excess of that original order. The trial court denied the motion in January 2001, relying on *Dones*, *supra*. The defendant appealed by leave granted, alleging that the matter is controlled by *Crego v Coleman*, 463 Mich 248 (2000), in which the Supreme Court held that the statute did not violate constitutional equal-protection guarantees and that nonmodifiable support agreements entered into pursuant to the statute are enforceable.

The Court of Appeals *held*:

The trial court erred in failing to give *Crego* prospective application. The *Crego* decision established a new principle of law by overturning the law upon which the trial court relied in modifying the original order of support. Prospective-only application of *Crego* is appropriate in this matter in order to accommodate the interests of the parties. The defendant is required to support the child in accordance with the terms of the original support order beginning February 1, 2001, the date on which the trial court granted a stay of proceedings pending this appeal and placed payments in excess of

the original support order in escrow. The escrowed amounts must be returned to the defendant. The trial court's ruling that *Crego* should not be applied retroactively to require the plaintiff to reimburse the defendant the amounts previously paid in excess of the original support order must be affirmed, and the matter must be remanded for further proceedings.

Affirmed in part, reversed in part, and remanded.

*Howard Yale Lederman* for the plaintiff.

*Alan R. Miller, P.C.* (by *Alan R. Miller* and *John J. Schrot, Jr.*), for the defendant.

Before: HOEKSTRA, P.J., and BANDSTRA and SAAD, JJ.

BANDSTRA, J. Defendant Michael Novik appeals by leave granted from an order of the circuit court denying his motion for modification of previous child-support orders. We affirm in part, reverse in part, and remand.

### BACKGROUND FACTS AND PROCEEDINGS BELOW

While unmarried, plaintiff Linda M. Hall gave birth to a child on December 20, 1990, following a relationship with Novik. On February 15, 1991, Hall filed a complaint for paternity against Novik. With the assistance of attorneys, the parties entered into a process of negotiation and an agreement was reached resulting in a court-approved consent order entered on December 23, 1991. This order provided that Novik did not acknowledge that he was the father of Hall's child but that he would make payments to Hall for the child's support and education at a set level, as well as provide a policy of health-care insurance on the child's behalf. The circuit court, in its order approving the parties' agreement, specified that the agreement made "adequate provision for the support

and education" of the child. Further, the order expressly barred any remedies that might otherwise be available to Hall against Novik, specifically disallowing any later modification of the agreement. The parties' agreement and the court order approving it were entered pursuant to MCL 722.713;[1] the parties do not argue that any provision of the statute authorizing this agreement and order (hereinafter the original support order) was not complied with fully.

During the ensuing decade, the constitutionality of the statute upon which this arrangement was based became the subject of a number of appellate-court decisions. Initially, a divided panel of this Court enforced a similar nonmodifiable settlement agreement, rejecting a claim that the statute was an unconstitutional denial of equal protection to illegitimate children. *Crego v Coleman*, 201 Mich App 443, 446-447; 506 NW2d 568 (1993) (*Crego I*). In 1995, in a separate case, a panel of our Court reached the opposite conclusion on the constitutional question and, because the statute underlying a nonmodifiable support agreement was thus struck down, held that the agreement could be modified through a further court order. *Dones v Thomas*, 210 Mich App 674, 679-680;

---

[1] Before its repeal by 1996 PA 308, § 2, MCL 722.713 provided:

(a) An agreement or compromise made by the mother or child or by some authorized person on their behalf with the father concerning the support and education of the child shall be binding upon the mother and the child only when the court having jurisdiction to compel support and education of the child shall have determined that adequate provision is reasonably secured by payment or otherwise and has approved the agreement or compromise.

(b) The performance of the agreement or compromise, when so approved, shall bar other remedies of the mother or child for the support and education of the child.

534 NW2d 221 (1995). As a result of *Dones*, the statute was repealed. See *Sturak v Ozomaro*, 238 Mich App 549, 556; 606 NW2d 441 (1999). However, that repeal did not affect orders, like that at issue here, that were entered while the statute was still in effect. The *Dones* Court did not consider *Crego I*. However, the *Crego* case returned to our Court and another panel decided that it was required to follow *Crego I* and uphold the constitutionality of the statute, although it agreed with the *Dones* panel's holding that the statute was unconstitutional. *Crego v Coleman*, 226 Mich App 815, 821; 573 NW2d 291 (1997) (*Crego II*). The opinion in *Crego II* was then vacated, and a special panel, convened to resolve this conflict of authority, MCR 7.215(H)(3), concluded that the statute was an unconstitutional violation of the equal-protection guarantees of the United States and Michigan constitutions. *Crego v Coleman*, 232 Mich App 284, 294-296; 591 NW2d 277 (1998) (*Crego III*). The issue was finally resolved by our Supreme Court, which held that the statute did not violate the equal protection clauses of the federal and state constitutions and that, therefore, nonmodifiable support agreements entered into pursuant to the statute are enforceable. *Crego v Coleman*, 463 Mich 248, 269-272; 615 NW2d 218 (2000) (*Crego IV*).

To summarize this history, during the period when the parties here negotiated and initially complied with their 1991 agreement, the statute upon which the agreement was based was considered constitutional.[2] *Dones* held otherwise in 1995, and its finding of

---

[2] The statute had been in effect since 1956, apparently without any constitutional challenge until *Crego I*. See *Crego III*, *supra* at 297 (WHITBECK, J., dissenting).

unconstitutionality was ultimately affirmed by this Court through the 1998 conflict-panel decision in *Crego III*. The five-year period running from *Dones*, during which the statute was considered unconstitutional, was ended by the 2000 Supreme Court decision in *Crego IV*, which constitutes the final resolution of the equal-protection issue.

In the instant case, notwithstanding the agreement, Hall returned to the circuit court seeking a modification of the original support order. Relying on *Dones*, the circuit court granted that relief and entered an order increasing the monthly payments that Novik was required to pay on behalf of the child and also making other changes to the benefits that were due.[3] This order (hereinafter referred to as the increased support order) further required the parties to undergo testing to determine whether Novik was the child's biological father. Following attempts by Novik to avoid that requirement,[4] Novik was determined to be the child's biological father.

### QUESTION PRESENTED AND STANDARD OF REVIEW

As noted earlier, the question presented here is the effect of *Crego IV* on the increased support order. Shortly after *Crego IV* was decided, defendant filed a

---

[3] Although Hall complains in her brief about Novik's failure to promptly comply with the increased support order, that is not an issue presented for decision here. Instead, the parties' argument is solely related to the effect of *Crego IV* on whether Hall must reimburse Novik for the difference in support that has been provided under the increased support order (and similar supplementary orders), compared to the original support order and whether the increased support order should continue to be enforced in the future.

[4] Again, Novik's compliance with the paternity determination order is not at issue in this appeal.

motion asking the circuit court to reinstate the original support order and require reimbursement of amounts paid in excess of it by Novik to Hall under the increased support order.

We are, of course, bound by *Crego IV*. However, *Crego IV* did not specify whether it should be applied retroactively; instead, it merely remanded the case to the circuit court "for further proceedings consistent with this opinion." *Crego IV*, *supra* at 282. *Crego IV* is thus a case in which the Court "announce[d] a change of law" while "refrain[ing] from going the next step to indicate how its new rule is to be applied." *Riley v Northland Geriatric Ctr (After Remand)*, 431 Mich 632, 643; 433 NW2d 787 (1988). The issue of the retroactive or prospective application of *Crego IV* is now left for us to decide here. *Id.* This is a question of law that we review de novo. *Curtis v Flint*, 253 Mich App 555, 563-564; 655 NW2d 791 (2002).

PROSPECTIVE APPLICATION OF *CREGO IV*

By completely denying Novik's motion, the circuit court ruled that Novik must continue to comply with the obligations of the increased support order in the future. In so doing, the circuit court failed to give *Crego IV* even prospective effect. *Crego IV* held that agreements such as that entered into by the parties here in 1991 are enforceable, the statute on which they were based being constitutional. Hall presents arguments against the retroactive application of *Crego IV*, which would amount to a decision requiring that she reimburse Novik for payments made in excess of the original support order as a result of the increased support order. She presents no argument against prospectively applying *Crego IV* to reinstate

the original support order in the future.[5] We hold that the circuit court erred in failing to give *Crego IV* even this prospective application.

We realize that Hall and the child have been accustomed to receiving support at a higher level under the increased support order. Accordingly, reverting back to the support level found in the original support order will require adjustment and represent a hardship to them. Nonetheless, *Crego IV* clearly held that the original agreement was premised on a constitutional statute and should have been enforced throughout. Accordingly, having freely negotiated and accepted that agreement initially, Hall cannot now rightfully claim that it is unfair to impose its limitations upon her in the future.

Further, we recognize that the situation has changed dramatically since the agreement was entered, Novik now having been determined to be the child's biological father. However, as Novik points out, he did not submit to paternity testing willingly, but was required to do so by the circuit court in contravention of the original agreement. The paternity determination would not have occurred but for precedents that incorrectly struck down the statute under which the agreement had been entered. It would be unfair now to continue imposing the obligations of the increased support order on Novik on the basis of that determination.

---

[5] Under the orders at issue here, Novik is required to continue making support payments until the child reaches the age of eighteen, approximately another six years.

RETROACTIVE APPLICATION OF *CREGO IV*

Whether *Crego IV* should be applied retroactively to require that Hall reimburse Novik for "excess payments" made under the increased support order presents a larger question.[6] Resolution of the issue of retroactive or prospective application "ultimately turns on considerations of fairness and public policy" requiring a court to " 'take into account the total situation confronting it and seek a just and realistic solution of the problems occasioned' " by an opinion that alters the law. *Riley, supra* at 644-645, quoting *Placek v Sterling Hts*, 405 Mich 638, 665; 275 NW2d 511 (1979). However, certain rules or principles providing guidance have evolved. *Id.* at 645. The "first criterion that must be determined in deciding whether a judicial decision should receive full retroactive application is whether that decision is establishing a new principle of law . . . ." *MEEMIC v Morris*, 460 Mich 180, 190; 596 NW2d 142 (1999).[7] A judicial decision

---

[6] The issue of the retroactive prospective application has been aptly described as a "dilemma." *Riley, supra* at 645. Our review of available precedents suggests that, while there are guidelines to follow, the application of those guidelines is not without question and some confusion. While applying the guidelines as best we can, we will provide footnote reference to questions or problems that we find to be unanswered.

[7] The effect of this "first criterion" is not clear. The *MEEMIC* Court merely stated that, if a decision does not announce a new principle of law, "then full retroactivity is favored," *id.* at 191, suggesting that full retroactivity might not always be required in the absence of such a "new principle of law." However, having determined that such a new principle of law was not at issue in the case before it, the Court held that full retroactive application was appropriate without any further analysis, *id.* at 197, suggesting that, in the absence of a new principle of law, retroactivity is automatic or necessary. This comports with the *MEEMIC* Court's citation of *Chevron Oil Co v Huson*, 404 US 97, 106-107; 92 S Ct 349; 30 L Ed 2d 296 (1971), where the United States Supreme Court reasoned that " 'the decision to be applied nonretroactively *must* establish a new principle of law . . . .' " See *MEEMIC, supra* at 189 (emphasis supplied). It also com-

establishes a new principle of law if it overrules "clear past precedent on which the parties have relied . . . ." *Id.*

We conclude that *Crego IV* presents such a "new principle of law." As the summary of precedents presented above indicates, by the time *Dones* was decided, and certainly by the time a conflict panel affirmed *Dones* in *Crego III,* "clear precedent" from our Court established that MCL 722.713 was unconstitutional. That precedent was relied on by Hall in bringing her motion for modification of the original support order. It was also relied on by the circuit court in granting the increased support order. Further, we note that the Legislature relied on our Court's determinations that the statute was unconstitutional in repealing the statute shortly after *Dones* was decided. *Sturak, supra.* By finding the statute constitutional, *Crego IV* overturned the law upon which all these actions were based; it established a new principle of law.

We reach that conclusion while acknowledging that the reversal by the Supreme Court of a Court of Appeals precedent does not always represent a new principle of law. See, generally, *MEEMIC, supra* at 191-197. In *MEEMIC, supra* at 197, the Court reasoned that the precedent it overturned was so poorly reasoned that its reversal was not "an unforeseeable decision . . . ." The Supreme Court noted that the precedent "was in direct conflict with the plain language

ports with the characterization of the new-principle-of-law question as being a "threshold" issue. *Riley, supra* at 646 n 8. In any event, we need not resolve the question because we determine here that *Crego IV* did present a new principle of law, thus allowing the possibility of nonretroactive application.

of the statute, the intent of the Legislature in enacting the statute, and two previous decisions" of the Supreme Court. *Id.* Further, the Supreme Court noted that, in the precedent, our Court had itself noted that the decision being rendered was " 'repugnant to the purposes and objectives . . . and to the plain language' " of the statute. *Id.* at 194, quoting *Profit v Citizens Ins Co of America*, 187 Mich App 55, 62; 466 NW2d 354 (1991).

In contrast, our Court's rulings in *Dones* and *Crego III* that MCL 722.713 was unconstitutional were not so poorly reasoned that parties could not justifiably rely upon them or foresee that they would be overturned by *Crego IV*. Instead, as illustrated by the dissenting opinions in *Crego IV*, the constitutionality of the statute was a close question where reasonable minds could differ. See *Crego IV*, *supra* at 293-296; see also *Tebo v Havlik*, 418 Mich 350, 362; 343 NW2d 181 (1984) (rejecting the argument that precedents of the Court of Appeals, not being decisions by the Supreme Court, cannot properly be relied upon), and *Gusler v Fairview Tubular Products*, 412 Mich 270, 298; 315 NW2d 388 (1981) (a Supreme Court decision contrary to prior interpretations by the Court of Appeals was considered to be "not unlike the announcement of a new rule of law").

As noted earlier, the determination that *Crego IV* established a new principle of law allows us to consider whether it should be applied nonretroactively, but it does not resolve that question. We find further guidance in *Riley*, *supra*, a case factually similar to that presented here. There, the issue was whether a prior Supreme Court decision, *Gusler*, *supra*, should be applied retroactively to require recipients of

worker's compensation benefits to repay excess sums received from their employers. They had previously received those sums by reason of precedents adopting an erroneous computation formula. The Supreme Court held that retroactive application was inappropriate:

> We believe fairness requires that *Gusler* be applied to workers' compensation awards made after . . . the date *Gusler* was decided . . . . Such a holding is fair because it allows employers to reduce their payments in accordance [with *Gusler*] while protecting employees with respect to payments received before *Gusler*. [*Riley, supra* at 645.]

The Court noted that employees and employers had relied for a number of years on the pre-*Gusler* interpretation of the worker's compensation act that allowed for benefit payments in excess of those available under *Gusler*. The Court reasoned that a prospective application of *Gusler* "appropriately recognizes that reliance, and . . . safeguards employees by not requiring repayment of any portion of benefits received prior to *Gusler*." *Id.* at 646.[8]

---

[8] We recognize that courts often apply a three-part test in determining retroactivity questions, weighing (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice. See, e.g., *Pohutski v City of Allen Park*, 465 Mich 675, 696; 641 NW2d 219 (2002). However, this analysis has not been employed in every case presenting a retroactivity question. See, e.g., *Tebo, supra* at 360-364; *Stanton v Lloyd Hammond Produce Farms*, 400 Mich 135, 144-148; 253 NW2d 114 (1977). In other cases, the second and third factors meld together "because the amount of past reliance will often have a profound effect upon the administration of justice." *People v Hampton*, 384 Mich 669, 677; 187 NW2d 404 (1971). To the extent that analysis under the three-part test is required, we note that *Riley, supra* at 646, upon which we primarily rely, did consider that test and concluded that prospective application of the new rule at issue was appropriate. For the same reasons in this factually similar case, we would reach that same conclusion if we were to apply the three-part test.

The same considerations lead us to conclude that a prospective application of *Crego IV* is appropriate here. As noted above, in modifying the original order to increase the support payments, the circuit court relied on earlier appellate decisions finding MCL 722.713 unconstitutional. In so doing, the circuit court determined that an increase was warranted to properly care for the child, a decision not contested by Novik. Hall received the increased payments and used them for the child's care. For example, the record here is clear that the child has been attending a private school that would likely not have been affordable under the original support order. It would be as unfair here to require that Hall reimburse Novik for amounts paid in excess of those due under the original support order as it would have been in *Riley* to require the worker's compensation benefit recipients to make reimbursement to their employers. As has been noted, "[r]equiring . . . a woman to make 'restitution' of years of child support payments could impose a tremendous hardship, literally to the point of bankruptcy." *Crego III, supra* at 329 (WHITBECK, J., dissenting).

Further, the public policy of this state, as reflected by statute, is that support payments once made for the care of a child are not normally "subject to retroactive modification." MCL 552.603(2). "[T]his provision normally operates to prevent a payer from retroactively decreasing support payments that have already come due . . . ." *Harvey v Harvey*, 237 Mich App 432, 437-438; 603 NW2d 302 (1999). The purpose of this statute is that " '[t]he custodial parent, who actually provides for the child's welfare, should be able to rely on receiving the court-ordered amount' "

until a petition for reduction has been filed. *Id.* at 438, quoting House Legislative Analysis, SB 318-320, June 30, 1987. Similarly, consistent with this statutory policy, a parent should be able to use court-ordered support payments without fear that reimbursement will be later required following a change in the law.

Earlier, we recognized that prospectively applying *Crego IV* works a hardship on Hall and now we acknowledge that failing to apply *Crego IV* retroactively works a hardship on Novik. Had the statute been considered constitutional throughout, as *Crego IV* finally determined it is, the original support order would have been enforced and Novik's payments would not have escalated. Nonetheless, any change of law presents a difficult situation and the job of the court is to determine the issue of prospective or retroactive application in a manner that best accommodates the interests of all those affected by it. In this case, we conclude that a prospective-only application of *Crego IV* best achieves that goal.[9]

### CONCLUSION

The circuit court erred in failing to give *Crego IV* prospective effect. The circuit court granted a stay of proceedings pending appeal here, placing payments beyond those required by the original support order into escrow beginning February 1, 2001. Beginning

---

[9] The gist of Novik's argument that *Crego IV* should be applied retroactively is that this approach would best return the parties to the status they had under the original support agreement and order. However, we note that, even though paternity testing was improperly required of Novik, as a matter of fact, a determination has been made that he is the child's biological father. To that extent, things have changed irrevocably since the parties entered into their agreement, making full reinstatement of that agreement problematic.

that date, Novik should be required to support the child only as specified in the original support order and the escrowed amounts should be returned to him.[10] We affirm the circuit court's ruling that *Crego IV* should not be applied retroactively to require that Hall reimburse Novik any amounts paid previously to her in excess of those required by that original order, pursuant to the increased support order.

We remand this case for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[10] Similarly, in other cases where circuit courts have modified agreements on the basis of *Dones* or its progeny, reinstatement of those agreements should be effective prospectively, beginning on the date that the circuit court enters an order to that effect.