# STATE OF MICHIGAN

# COURT OF APPEALS

W A FOOTE MEMORIAL HOSPITAL, doing
business as ALLEGIANCE HEALTH,

        Plaintiff-Appellant,

v

MICHIGAN ASSIGNED CLAIMS PLAN and
MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY,

        Defendants-Appellees,

and

JOHN DOE INSURANCE COMPANY,

        Defendant.

FOR PUBLICATION
August 31, 2017
9:00 a.m.

No. 333360
Kent Circuit Court
LC No. 15-008218-NF

Before: BOONSTRA, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

BOONSTRA, P.J.

    Plaintiff appeals by right the trial court's order denying its motion for summary disposition and granting the cross-motion for summary disposition filed by defendants Michigan Assigned Claims Plan and Michigan Automobile Insurance Placement Facility (collectively, "defendants"). We affirm, and remand for further proceedings consistent with this opinion.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

    This case arises out of an automobile accident that occurred on September 4, 2014. Zoie Bonner was a passenger in a 2003 Ford Taurus driven by her boyfriend, Philip Kerr, when it rear-ended another vehicle. The Taurus was owned by Bonner's aunt or uncle, and was insured under an automobile insurance policy issued by Citizens Insurance Company of the Midwest ("Citizens"). The police report generated by the Jackson City Police Department concerning the accident identified the applicable insurance for the Taurus as "Citizens Insurance." It also contained Kerr's name, a description of the vehicle, the vehicle registration number, and the vehicle identification number. It did not, however, identify Bonner as a passenger in the Taurus or as an injured party. Bonner did not seek immediate medical attention, but was treated for rib pain by plaintiff's emergency department the following day. Bonner's emergency department

-1-

chart indicates that she told medical providers that she was involved in a motor vehicle accident the previous day in which she was a passenger in a vehicle that had rear-ended another vehicle. It does not appear that any employees of plaintiff asked Bonner about applicable automobile insurance. Plaintiff provided Bonner with medical services valued at $9,113.

During the year following the accident, plaintiff repeatedly attempted to contact Bonner to obtain information concerning applicable insurance coverage. Plaintiff sent letters, telephoned Bonner, and hired a private investigator eight months after the accident. The private investigator eventually made contact[1] with Bonner in June 2015. Bonner stated that neither she nor her boyfriend had automobile insurance but that her aunt owned the vehicle that Kerr had been driving. Neither plaintiff nor its investigator obtained any contact information for Bonner's aunt or boyfriend, apparently failing even to obtain Bonner's aunt's or Kerr's name. They also did not obtain the police report from the accident.

On September 3, 2015 (one day before the one-year anniversary of the accident), plaintiff filed a claim with defendants, seeking no-fault personal protection insurance benefits (also called personal injury protection benefits or PIP benefits) on Bonner's behalf under Michigan's no-fault insurance act, MCL 500.3101 *et seq*. Under the no-fault act, an injured person may seek PIP benefits from defendants within one year of the injury when no personal protection insurance applicable to the injury can be identified. MCL 500.3172(1); MCL 500.3145.[2] The following day, and before any response from defendants, plaintiff filed suit requesting that the trial court enter a judgment declaring that defendants had a duty to promptly assign its claim to an insurer and that, upon assignment, the insurer would be responsible to process and pay the claim.

On September 17, 2015, defendants responded to plaintiff's claim with a letter indicating that it was unable to process the claim without additional information. The letter requested that additional information be forwarded to defendants and stated that the claim would be reviewed once complete information was received. In October 2015, defendants answered plaintiff's complaint, asserting, among other defenses, that plaintiff had failed to state a claim for which relief could be granted, that plaintiff had not submitted a completed claim for PIP benefits, that defendants did not owe benefits because they were not "incurred" by Bonner, and that plaintiff was precluded from obtaining relief because plaintiff had "failed to obtain primary coverage within the obligation of the primary carrier(s)" to the detriment of defendants.

Bonner was deposed in December 2015. She testified that her aunt owned the vehicle and maintained insurance on it,[3] although she did not know the name of the insurer. Citizens was subsequently identified as the insurer of the vehicle. Plaintiff attempted to submit a claim

---

[1] The investigator's report states that an unnamed employee of plaintiff called the investigator with "Zoie on the other line" and relayed information to the investigator from Bonner.

[2] The applicable limitations period may be extended if written notice of injury has been provided to the insurer within 1 year after the accident. MCL 500.3145(1).

[3] Apparently, it was actually Bonner's uncle who owned and purchased insurance on the vehicle.

for PIP benefits to Citizens, but Citizens denied the claim as being beyond the one-year deadline contained in MCL 500.3145.

Defendants moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff's claim was ineligible for assignment because applicable insurance had been identified, and because plaintiff could have recovered PIP benefits from Citizens if it had acted in a timely fashion. Plaintiff responded and also moved for summary disposition, arguing that defendants were required to promptly assign plaintiff's claim at the time of the claim application unless the claim was obviously ineligible, and that they had failed to do so. Plaintiff argued that the subsequent discovery of information concerning the Citizens policy did not alter this obligation.

After a hearing on the parties' motions, the trial court denied plaintiff's motion for summary disposition and granted defendants' motion for summary disposition, reasoning that plaintiff had failed to demonstrate that it could not have identified applicable insurance at the time it submitted its application for PIP benefits to defendants. Further, plaintiff could have learned of the Citizens policy if it had filed suit directly against Bonner for the unpaid medical bills, if it had obtained proper information from Bonner at the time of treatment, if it had obtained the police report concerning the automobile accident, or if it had followed up on information that Bonner's aunt owned the vehicle in question.

This appeal followed. During the pendency of this appeal, our Supreme Court issued its opinion in *Covenant Med Ctr, Inc v State Farm Mut Ins Co*, ___ Mich ___; 895 NW2d 490 (2017) (Docket No. 152758). *Covenant* reversed decisions of this Court that had recognized that healthcare providers could maintain direct causes of action against insurers to recover PIP benefits, and held that no such statutory cause of action exists. *Id.*, slip op at 2. On August 1, 2017, defendants filed motions with this Court for immediate consideration and for leave to file a nonconforming supplemental authority brief addressing *Covenant* and its effect on this case. This Court granted the motions, and accepted the supplemental briefs that had been submitted by both plaintiff and defendants.[4]

## II. STANDARD OF REVIEW

This Court reviews de novo the grant or denial of motions for summary disposition under MCR 2.116(C)(10). See *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). MCR 2.116(C)(10) provides that a trial court may grant judgment on all or part of a claim where "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). We also review de novo questions of statutory interpretation, see *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007), as well as whether

---

[4] *W A Foote Memorial Hosp v Mich Assigned Claims Plan*, unpublished order of the Court of Appeals, issued August 4, 2017 (Docket No. 333360).

a judicial decision applies retroactively, *McNeel v Farm Bureau Gen Ins Co of MI*, 289 Mich App 76, 94; 795 NW2d 205 (2010).

## III. ANALYSIS

Plaintiff argues that the trial court improperly granted defendants' motion for summary disposition, and instead should have granted summary disposition in favor of plaintiff, because defendants were obligated to assign its claim to an insurer under MCL 500.3172(1). Because we hold that *Covenant* controls this issue and applies to this case, we disagree. We therefore affirm the trial court's grant of summary disposition in favor of defendants, albeit for reasons other than those stated by the trial court. We further remand this case to the trial court for further proceedings consistent with this opinion.

## A. GENERAL LEGAL PRINCIPLES UNDER THE NO-FAULT ACT

Michigan's no-fault insurance act, MCL 500.3101 *et seq*., requires motor vehicle owners or registrants to carry no-fault insurance coverage that provides for PIP benefits. PIP benefits are payable "for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." MCL 500.3105(1). When a person suffers injury as the result of a motor vehicle accident, the person typically has one year to commence an action to recover PIP benefits. MCL 500.3145(1). The injured person must look first to his or her own no-fault policy or to a no-fault policy issued to a relative with whom he or she is domiciled. MCL 500.3114(1); see also *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 262; 819 NW2d 68 (2012). If neither the injured person nor any relatives with whom the person is domiciled have no-fault coverage, the person may seek to recover benefits from "the [i]nsurer of the owner or registrant of the vehicle occupied" and "[t]he insurer of the operator of the vehicle occupied," in that order. MCL 500.3114(5). If the person is unable to recover under any of these options, the person may seek PIP benefits through Michigan's assigned claims plan[5] under MCL 500.3172(1), which provides:

> A person entitled to a claim because of accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle in this state may obtain personal protection insurance benefits through the assigned claims plan if no personal protection insurance is applicable to the injury, no personal protection insurance applicable to the injury can be identified, the personal protection insurance applicable to the injury cannot be ascertained because of a dispute between 2 or more automobile insurers concerning their obligation to provide coverage or the equitable distribution of the loss, or the only identifiable personal protection insurance applicable to the injury is, because of financial inability of 1 or more insurers to fulfill their obligations, inadequate to provide benefits up to the maximum prescribed. In that case, unpaid benefits due or coming due may be collected under the assigned claims plan and the insurer to

---

[5] The Michigan assigned claims plan is adopted and maintained by the Michigan automobile insurance placement facility. See MCL 500.3171(2).

which the claim is assigned is entitled to reimbursement from the defaulting insurers to the extent of their financial responsibility.

Accordingly, a person may recover PIP benefits from the assigned claims plan where (1) no personal protection insurance is applicable to the injury; (2) no personal protection insurance applicable to the injury can be identified; (3) the applicable insurance cannot be ascertained due to a dispute among insurers; or (4) the only applicable insurance is inadequate due to financial inability. See MCL 500.3172(1); *Spectrum Health v Grahl*, 270 Mich App 248, 251; 715 NW2d 357 (2006).[6]

## B. THE *COVENANT* DECISION

MCL 500.3112 states in pertinent part that "[p]ersonal protection insurance benefits are payable to or for the benefit of an injured person or, in case of his death, to or for the benefit of his dependents." Before our Supreme Court's decision in *Covenant*, this Court had held that this language permitted a healthcare provider who had provided services to an insured to seek recovery of those benefits directly from the insurer. See *Wyoming Chiropractic Health Clinic, PC v Auto-Owners Ins Co*, 308 Mich App 398, 401; 864 NW2d 598 (2014), overruled by *Covenant*, ___ Mich at ____, slip op at 3. In *Covenant*, our Supreme Court examined the language of MCL 500.3112 and held that the statute did not create an independent cause of action for healthcare providers to pursue PIP benefits from an insurer. *Id*. at __, slip op at 2. Our Supreme Court also determined that no other provision of the no-fault act grants a statutory cause of action to a healthcare provider for recovery of PIP benefits from an insurer:

> And further, no other provision of the no-fault act can reasonably be construed as bestowing on a healthcare provider a statutory right to directly sue no-fault insurers for recovery of no-fault benefits. We therefore hold that healthcare providers do not possess a statutory cause of action against no-fault insurers for recovery of personal protection insurance benefits under the no-fault act. The Court of Appeals caselaw concluding to the contrary is overruled to the extent that it is inconsistent with this holding.

---

[6] The parties agree that the statutory section pertinent to this case is that requiring that "no personal protection insurance applicable to the injury can be identified." MCL 500.3172(1). Plaintiff argues that MCL 500.3172(1) does not specify a particular level of diligence that must be exercised in attempting to identify an insurer of the injury. However, it acknowledges that the use of the term "can be" relates to an *ability* to identify a responsible insurer, as opposed merely to whether such an insurer has in fact been identified. And we must give effect to the words the Legislature has chosen. See *Jesperson v Auto Club Ins Assoc*, 499 Mich 29, 36-37; 878 NW2d 799 (2016). Assuming (as the trial court found) that some level of diligence is implicit in the statute, plaintiff then suggests that the applicable standard should be that of a "reasonable person," and that it satisfied that standard in this case. We need not decide these issues for the reasons that follow.

-5-

In sum, a review of the plain language of the no-fault act reveals no support for plaintiff's argument that a healthcare provider possesses a statutory cause of action against a no-fault insurer. This conclusion does not mean that a healthcare provider is without recourse; a provider that furnishes healthcare services to a person for injuries sustained in a motor vehicle accident may seek payment from the injured person for the provider's reasonable charges. However, a provider simply has no statutory cause of action of its own to directly sue a no-fault insurer. [*Id*. at __, __; slip op at 2-3, 23-24 (footnotes omitted).]

Although our Supreme Court did not specifically address MCL 500.3172(1) in its analysis, it is clear from the opinion in *Covenant* that healthcare providers such as plaintiff cannot pursue a statutory cause of action for PIP benefits directly from an insurer. Nothing in *Covenant* or the language of MCL 500.3172(1) suggests a different outcome where a healthcare provider seeks benefits from an insurer assigned by defendants as opposed to a known insurer.[7] Indeed, it would seem nonsensical to prohibit direct actions by healthcare providers seeking PIP benefits from known insurers while permitting such direct actions by healthcare providers where there is no known or applicable insurer. See *Turner v Auto Club Ins Assoc*, 448 Mich 22, 28; 528 NW2d 681 (1995). ("[W]hen courts interpret a particular phrase in a statute, they must, whenever possible, construe the phrase in such a way that the interpretation does not conflict with, or deny effect to, other portions of the statute."). Accordingly, because our Supreme Court has determined that a healthcare provider cannot maintain a direct action for personal protection benefits under the no-fault act and nothing in MCL 500.3172(1) creates an exception to that rule, *Covenant* bars plaintiff's claim if its holding is applicable in this case. The question then becomes whether *Covenant* applies only prospectively, or applies to cases pending on appeal when it was issued. This question was the subject of the parties' supplemental briefing.

C. WAIVER AND PRESERVATION

Before reaching that question, we must decide whether it is properly before us. We conclude that it is. We find unpersuasive plaintiff's assertion that defendants waived or failed to preserve the issue of whether plaintiff possessed a statutory cause of action against them. First, the defense of "failure to state a claim on which relief can be granted" is not waived even if not asserted in a responsive pleading or motion. MCR 2.111(F)(2). Second, defendants asserted such an affirmative defense in this case and also asserted the defenses that plaintiff lacked standing to sue and that defendants did not owe benefits to plaintiff because plaintiff was not the one who had "incurred" them. This in essence is an assertion that plaintiff did not have a statutory right to sue defendants directly, in recognition of our holding that MCL 500.3112 "confers a cause of action on the injured party and does not create an independent cause of action for the party who is legally responsible for the injured party's expenses." *Hatcher v State Farm Mut Auto Ins Co*, 269 Mich App 596, 600; 712 NW2d 744 (2005). Rather, "the right to bring a

---

[7] Indeed, the Supreme Court has remanded one such action to this Court for further consideration in light of *Covenant*. See *Bronson Methodist Hosp v Michigan Assigned Claims Facility*, ___ Mich ___; 897 NW2d 735 (2017).

personal protection insurance action . . . belongs to the injured party." *Id*.[8] Third, given the state of the caselaw at the time of the proceedings below, and defense counsel's statements at the summary disposition motion hearing, it is clear that counsel was aware that then-applicable Court of Appeals precedent likely would have rendered any such argument futile at the time. Finally, and while plaintiff cites *Dell v Citizens Ins Co of America*, 312 Mich App 734, 751 n 40; 880 NW2d 280 (2015), for the proposition that "[g]enerally, an issue must be raised, addressed, and decided in the trial court to be preserved for review," this Court said in its very next breath that "[t]his Court may [nonetheless] address the issue because it concerns a legal issue and all of the facts necessary for its resolution are present." *Id*. The same is true here. We therefore conclude that the issue has not been waived and has been adequately preserved.[9]

---

[8] We appreciate that in *Hatcher* the "party who [wa]s legally responsible for the injured party's expenses" was the injured party's mother, rather than a healthcare provider. Nonetheless, because Congress has seen fit to declare as a matter of public policy that healthcare providers are obligated in certain circumstances to provide healthcare services without regard to an injured party's ability to pay or insurance status, see 42 USC 1395dd, they to some extent stand in similar shoes as do responsible parents and thus fall within the proscription recognized in *Hatcher* (and *Covenant*).

[9] Without meaning to get ahead of ourselves, our determination that the issue before us is adequately preserved means that we need not decide at this time whether (assuming for the moment that *Covenant* should apply retroactively) it is full or limited retroactivity that should apply. See *McNeel v Farm Bureau Gen Ins Co of MI*, 289 Mich App 76, 95 n 7; 795 NW2d 205 (2010) (noting that a judicial decision with full retroactivity would apply to all cases then pending, whereas with limited retroactivity it would apply in pending cases in which the issued had been raised and preserved). Nonetheless, we note that our Supreme Court has at times held that a judicial decision should apply according to the "usual" rule of retroactivity, rather than prospectively, and—albeit without discussing full retroactivity v limited retroactivity—has added language that is consistent with a holding of limited retroactivity. See e.g. *Wayne Co v Hathcock*, 471 Mich 445, 484; 684 NW2d 765 (2004) (footnotes omitted), wherein the Court stated,

> [T]here is no reason to depart from the usual practice of applying our conclusions of law to the case at hand. Our decision today does not announce a new rule of law, but rather returns our law to that which existed before [*Poletown Neighborhood Council v Detroit*, 410 Mich 616, 304 NW2d 455 (1981)] and which has been mandated by our Constitution since it took effect in 1963. Our decision simply applies fundamental constitutional principles and enforces the "public use" requirement as that phrase was used at the time our 1963 Constitution was ratified.

D.  RETROACTIVITY VERSUS PROSPECTIVITY

1.  GENERAL PRINCIPLES

" '[T]he general rule is that judicial decisions are to be given complete retroactive effect." *McNeel*, 289 Mich App at 94, quoting *Hyde v Univ of Mich Bd of Regents*, 426 Mich 223, 240; 393 NW2d 847 (1986) (citations omitted).[10]  "We have often limited the application of decisions which have overruled prior law or reconstrued statutes.  Complete prospective application has generally been limited to decisions which overrule clear and uncontradicted case law.' "  *Id.* quoting *Hyde*, 426 Mich at 240.  If a rule of law announced in an opinion is held to operate retroactively, it applies to all cases still open on direct review.  *Id.* at 94, citing *Harper v Virginia Dep't of Taxation*, 509 US 86, 97; 113 S Ct 2510; 125 L Ed 2d 74 (1993).  On the other hand, a rule of law that applies only prospectively does not apply to cases still open on direct review and does "not even apply to the parties in the case" where the rule is declared.  *Id.*

---

Therefore, our decision to overrule *Poletown* should have retroactive effect, applying to all pending cases in which a challenge to *Poletown* has been raised and preserved.

At other times, the Court has ruled similarly, while noting that "this form of retroactivity is generally classified as 'limited retroactivity,' " see e.g. *Devillers v Auto Club Ins Assoc*, 473 Mich 562, 587 and n 57; 702 NW2d 539 (2005) ("our decision in this case is to be given retroactive effect as usual and is applicable to all pending cases in which a challenge to [*Lewis v DAIIE*, 426 Mich 93; 393 NW2d 167 (1986)]'s judicial tolling approach has been raised and preserved"), but without addressing the rationale for when to apply limited rather than full retroactivity.  See also, *Hyde v Univ of Mich Bd of Regents*, 426 Mich 223, 240-241; 393 NW2d 847 (1986) (noting that "the general rule is that judicial decisions are to be given complete retroactive effect," yet holding that "the rules articulated in [*Ross v Consumers Power Co* (*On Rehearing*), 420 Mich 567; 363 NW2d 641 (1984)] should be applied to all cases . . . pending either in trial or appellate courts . . . which properly raised and preserved a governmental immunity issue").  At still other times, the Court has suggested that limited retroactivity may be appropriate where there has been "extensive reliance" on prior caselaw, to "minimize[] the effect of [a later] decision on the administration of justice."  *Gladych v New Family Homes, Inc*, 468 Mich 594, 606; 664 NW2d 705 (2003) (footnote omitted).  This Court has at times subsequently cited to certain of these and other Supreme Court cases for the rather anomalous proposition that "[g]enerally, judicial decisions are given *full* retroactive effect, i.e., they are *applied to all pending cases in which the same challenge has been raised and preserved*."  *Paul v Wayne County Dept of Public Service*, 271 Mich App 617, 620; 722 NW2d 922 (2006) (emphasis added).  See also *Clay v Doe*, 311 Mich App 359, 362; 876 NW2d 248(2015), quoting *Paul*, 271 Mich App at 620.  We therefore invite our Supreme Court to clarify the respective circumstances in which full retroactivity and limited retroactivity should apply.

[10] As noted earlier in this opinion, it is not entirely clear to us whether the general rule of complete retroactivity means full retroactivity or limited retroactivity.  Nonetheless, for the reasons noted, it does not matter to our analysis in this case.

-8-

## 2. SUMMARY OF THE PARTIES' POSITIONS

Plaintiff would have us follow a line of cases that employ a "flexible approach" to determining whether a judicial decision has retroactive effect. See e.g., *Bezeau v Palace Sports & Entertainment, Inc*, 487 Mich 455; 795 NW2d 797 (2010), citing *Pohutski v City of Allen Park*, 465 Mich 675, 696; 641 NW2d 219 (2002) ("In general, this Court's decisions are given full retroactive effect. . . . However, there are exceptions to this rule. This Court should adopt a more flexible approach if injustice would result from full retroactivity. . . . Prospective application may be appropriate where the holding overrules settled precedent."); see also *Tebo v Havlik*, 418 Mich 350, 360; 343 NW2d 181 (1984) ("Although it has often been stated that the general rule is one of complete retroactivity, this Court has adopted a flexible approach.") (footnote omitted). Under this line of reasoning, "resolution of the retrospective-prospective issue ultimately turns on considerations of fairness and public policy." *Riley v Northland Geriatric Center*, 431 Mich 632, 644; 433 NW2d 787 (1988); see also *Placek v Sterling Heights*, 405 Mich 638, 665; 275 NW2d 511 (1979). Plaintiff argues that it would be unfair to apply *Covenant* retroactively because plaintiff and others have relied on a long line of pre-*Covenant* decisions from this Court that recognized a healthcare provider's statutory right to bring suit against an insurer under MCL 500.3112. Plaintiff further argues that *Covenant* satisfies the initial threshold question for determining whether prospective application is warranted, i.e., "whether the decision clearly established a new principle of law." *Pohutski*, 465 Mich at 696. Having thus satisfied the threshold question, plaintiff argues the resulting three-factor test for prospective application is also satisfied. See *id*. ("[T]hree factors [are] to be weighed in determining when a decision should not have retroactive application. Those factors are: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice.").

Defendants concede that a certain level of unfairness exists whenever judicial decisions alter the actual or perceived state of the law, but counter that such a flexible approach would turn every court into a court of equity. Defendants further recognize that the threshold question and three-factor test have been often repeated in Michigan caselaw. But defendants characterize prospective judicial decision-making as "a relatively new and somewhat novel concept that conflicts with the traditional fundamental understanding of the nature of the judicial function." Defendants therefore advance a line of cases that recognize that the general and usual rule is that of retroactivity. Under this line of reasoning, "[p]rospective application is a departure from [the] usual rule and is appropriate only in 'exigent circumstances,'" *Devillers v Auto Club Ins Assoc*, 473 Mich 562, 586; 702 NW2d 539 (2005) (retroactively overruling a 19-year-old legal precedent determined to be inconsistent with plain statutory language) warranting "the 'extreme measure' of prospective application," *Wayne Co v Hathcock*, 471 Mich 445, 484 n 98; 684 NW2d 765 (2004) (retroactively overruling a 23-year-old legal precedent determined to be inconsistent with proper constitutional interpretation), citing *Gladych v New Family Homes, Inc*, 468 Mich 594, 606; 664 NW2d 705 (2003) (retroactively overruling a 32-year-old legal precedent determined to be inconsistent with plain statutory language).

Even more fundamentally, defendants argue that the United States Supreme Court in *Harper* definitively established that judicial decisions regarding federal law "must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule," *Harper*, 509 US at 97,

and that the Michigan courts have essentially adopted (or, alternatively, that we should adopt) that definitive rule in Michigan state court jurisprudence. Indeed, defendants argue that it is difficult to discern any reason why the *Harper* reasoning would not "perfectly harmonize" with Michigan jurisprudence, and that it can no more be said of Michigan jurisprudence (than of federal jurisprudence) that we can "permit 'the substantive law [to] shift and spring' according to 'the particular equities of [individual parties'] claims' of actual reliance on an old rule and of harm from a retroactive application of the new rule." *Id*. (citation omitted).

Defendants further argue that *Covenant* did not establish a new principle of law, but instead corrected judicial misinterpretations of statutory law to return the law to what it always had been, such that the threshold question of *Pohutski*, if applicable, is not satisfied. Defendants do not concede that *Pohutski*'s three-factor test, if applicable, favors prospective application of *Covenant*, but acknowledge that their stronger arguments lie elsewhere.

## 3. UNPACKING THE EVOLVING CASELAW

Based on our analysis of the shifting sands of the evolving caselaw, both in Michigan and in the United States Supreme Court, on the issue of the retroactivity/prospectivity of judicial decisions, we conclude that it would be nigh to impossible to divine a rule of law that lends complete consistency and clarity to the various espousements of the Courts, with their shifting makeups, over the years. Rather, the caselaw has evolved over time, and in at least some respects is not today where it once was.

The one constant is that the general rule is, and always has been, that judicial decisions apply retroactively. The jurisprudential debate over the years has instead been over whether and under what circumstances deviations should be made from the general rule of retroactivity. The underpinnings of what we have described, for purposes of Michigan state court jurisprudence, as the "threshold question" and "three-part test" of *Pohutski*, derive from decisions of the United States Supreme Court in *Linkletter v Walker*, 381 US 618; 85 S Ct 1731; 14 L Ed 2d 601 (1965), and *Chevron Oil Co v Huson*, 404 US 97; 92 S Ct 349; 30 L Ed 2d 296 (1971). Subsequently, and without belaboring the path that led to *Harper*, the United States Supreme Court ultimately reversed the direction it had taken in those cases, and instead definitively adopted the following rule:

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule. [*Harper*, 509 US at 97.]

State courts nonetheless appear to remain free to adopt their own approach to retroactivity under state law, so long as it does not extend to an interpretation of federal law. See, *id*. at 100 (citations omitted) ("Whatever freedom state courts may enjoy to limit the retroactive operation of their own interpretations of state law . . . cannot extend to their interpretations of federal law."). See also *Great Northern R Co v Sunburst Oil & Refining Co*, 287 US 358, 364-366; 53 S Ct 145; 77 L Ed 350 (1932); *Riley*, 431 Mich at 644. And indeed,

the Michigan courts did so, adopting and applying the "threshold question" and "three-part test" in numerous cases over the years.

Defendants concede that the Michigan Supreme Court has never expressly adopted the reasoning of *Harper* into Michigan jurisprudence, and indeed that no Michigan appellate court has actually considered whether the *Harper* rule should be adopted in Michigan. Nonetheless, defendants invite us to read this Court's citation to *Harper* in *McNeel* as effectively extending the *Harper* rule to Michigan's state court jurisprudence so as to require that all decisions of the Michigan Supreme Court (like *Covenant*) must be given full retroactive effect. We decline that invitation, inasmuch as *McNeel* did not cite *Harper* to mandate retroactivity, but rather merely to explain that where a decision applies retroactively, it applies to all pending cases.[11]

We must therefore consider defendants' alternative invitation to so extend *Harper* ourselves. We are an error-correcting Court, however, and such a determination is therefore one that is best decided by our Supreme Court in the first instance. See *People v Woolfolk*, 304 Mich App 450, 475; 848 NW2d 169 (2014). We therefore look to the current state of our Supreme Court's pronouncements on the issue for guidance. In *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Michigan*, 492 Mich 503; 821 NW2d 117 (2012), the Court overturned an earlier judicial interpretation of a provision of the no-fault act, just as it later did in *Covenant*.[12] As in *Covenant*, the Court did so based on its conclusion that the earlier judicial decision was inconsistent with the plain meaning of the statute. The Court in *Spectrum Health* held that its decision was "retrospective in its operation," and it did so without undertaking any analysis of the *Pohutski* "threshold question" or "three-factor test." *Spectrum Health*, 492 Mich at 535. Instead, its stated rationale was as follows:

> " 'The general principle is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former decision is bad law, but that it never was the law.' " This principle does have an exception: When a

_____

[11] We are similarly unpersuaded by defendants' citation to *Hall v Novik*, 256 Mich App 387, 392; 663 NW2d 522 (2003), which defendants contend implicitly found that where a judicial decision specifies the order to be entered by the trial court on remand (as occurred in *Covenant*), rather than merely remanding for "further proceedings consistent with this opinion," that it necessarily applied the law to the parties before it, which defendant contends is the legal equivalent of expressly stating that the decision applies retroactively. We believe that defendants overread *Hall* in advancing this argument.

[12] Specifically, the Court disavowed an earlier opinion of the Supreme Court, and overturned decisions of this Court that applied it, that had recognized a "family joyriding exception" to MCL 500.3113(a) (which prohibited persons who had willingly operated or used a motor vehicle that was taken unlawfully from receiving PIP benefits). We note that the disavowed Supreme Court opinion was a plurality opinion, and the Court in *Spectrum Health* therefore found that the principles of *stare decisis* did not apply. *Spectrum Health*, 492 Mich at 535.

"statute law has received a given construction by the courts of last resort and contracts have been made and rights acquired under and in accordance with such construction, such contracts may not be invalidated, nor vested rights acquired under them impaired, by a change of construction made by a subsequent decision."

[*Id*. at 536 (footnotes omitted).]

Given that this is the most recent pronouncement of our Supreme Court on this issue, it is critical to informing our analysis of whether *Covenant* should be applied retroactively or prospectively.

## 4. AS APPLIED TO *COVENANT*

### (A). DISCERNING DIRECTION FROM THE SUPREME COURT IN AND AFTER *COVENANT*

Defendants argue that the Supreme Court conclusively determined in *Covenant* itself that its decision applied retroactively. Defendants acknowledge that neither the words "retroactive" nor "prospective" appear in the Court's opinion, but instead glean a conclusive determination of retroactivity from the Court's remand of the case to the trial court for the entry of summary disposition in favor of the defendant insurer. In effect, this is a restatement of defendants' position regarding the applicability of *Harper* to Michigan state court jurisprudence. Plaintiff argues, to the contrary, that the remand for entry of summary disposition is not dispositive, pointing out that this Court has occasionally declared a case to have only prospective effect despite the fact that our Supreme Court had applied its holding to the parties before it. In support of this argument, plaintiff cites our decision in *People v Gomez*, 295 Mich App 411; 820 NW2d 217 (2012), concerning the prospective effect of a United States Supreme Court decision announcing a new rule of criminal procedure. However, we conducted that analysis under federal law regarding changes to criminal procedure, under which "a new rule of criminal procedure generally cannot be applied retroactively to alter a final judgment." *Id*. at 415. And although we did declare that our Supreme Court's decision in *Rory v Continental Ins* Co, 473 Mich 457; 703 NW2d 23 (2005), was prospective only, see *West v Farm Bureau Gen Ins Co* (*On Remand*), 272 Mich App 58, 60; 723 NW2d 589 (2006), our Supreme Court applied *Rory* retroactively two years later in *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 205-206; 747 NW2d 811 (2008).

Nonetheless, and particularly because the Supreme Court has not expressly adopted the *Harper* rationale, we accept plaintiff's position that the Supreme Court's remand in *Covenant* (for entry of summary disposition) is not necessarily dispositive, and we therefore will assume for purposes of this opinion that we have the authority to decide the issue of retroactivity. However, the Supreme Court not only remanded *Covenant* for the entry of summary disposition, but it has also subsequently remanded at least two cases, in lieu of granting leave to appeal, to this Court for reconsideration in light of *Covenant*. See *Bronson Methodist Hosp v Michigan Assigned Claims Facility*, ___ Mich ___; 897 NW2d 735 (2017); *Spectrum Health Hosps v Westfield Ins Co*, ___ Mich ___; 897 NW2d 166 (2017). Thus, the Supreme Court both applied the rule of law it announced in *Covenant* to the parties before it and has also directed this Court to consider *Covenant*'s application to cases pending on direct appeal. While still not dispositive,

we interpret both actions as suggesting that the Court did not intend the rule of law announced in *Covenant* to be applied prospectively only.

## (B). *SPECTRUM HEALTH* IS DISPOSITIVE

We next must address the question of how to apply the caselaw that we have endeavored to unpack in this opinion. As noted, we find little basis on which to reconcile the various pronouncements of the Courts over time. We are therefore guided by two parallel considerations: (1) the evolution of the caselaw in the United States Supreme Court, and (2) the evolution of the caselaw in the Michigan Supreme Court.

As we have indicated, the latter derived from the former. That is, the principles adopted and applied by the Michigan Supreme Court with respect to retroactivity/prospectivity had their genesis in the jurisprudence of the United States Supreme Court. That does not necessarily mean that Michigan jurisprudence will continue to follow (for state law purposes) the jurisprudence of our nation's highest Court, but we find it instructive nonetheless.

The evolution of the caselaw in the United States Supreme Court culminated in *Harper*, wherein, as we have noted, the Court definitively held:

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule. [*Harper*, 509 US at 97.]

The evolution of the caselaw in the Michigan Supreme Court has culminated to date in *Spectrum Health*, wherein, as we have also noted, the Court held:

> " 'The general principle is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former decision is bad law, but that it never was the law.' "[13] [*Id*. at 536 (citations omitted).]

At its core, this means that notwithstanding the understandable reliance of plaintiff and others on prior decisions of this Court, those decisions did not represent "the law." Rather, "the law" in this instance is the pronouncement of the Legislature in the statutory text of MCL 500.3112. Absent legislative revision, that law is immutable and unmalleable; its meaning does not ebb and flow with the waves of judicial preferences.[14] See *Mayor of Lansing v Pub*

---

[13] As noted earlier, the Court in *Spectrum Health* recognized an exception to that rule. We will discuss that exception later in this opinion.

[14] *Spectrum Health* effectively repudiated *Pohutski* on this issue; in *Pohutski*, the Court stated, "Although this opinion gives effect to the intent of the Legislature that may be reasonably be inferred from the text of the governing statutory provisions, practically speaking our holding is

*Service Comm*, 470 Mich 154, 161; 680 NW2d 840 (2004) ("Our task, under the Constitution, is the important, but yet limited, duty to read and interpret what the Legislature has actually made the law. We have observed many times in the past that our Legislature is free to make policy choices that, especially in controversial matters, some observers will inevitably think unwise. This dispute over the wisdom of a law, however, cannot give warrant to a court to overrule the people's Legislature."). We recognize that the application of this principle can sometimes lead to seemingly unfair results. However, any unfairness ultimately derives not from the application of the law itself, but rather from the judiciary's determination to stray from the law. And our first obligation must be to maintain the rule of law. *Id.*

We therefore must apply the Supreme Court's pronouncement in *Spectrum Health*. In doing so, we note that it hardly breaks new ground. Rather, it returns us to the foundational principles as expressed by Sir William Blackstone:

> For if it be found that the former decision is manifestly absurd or unjust, it is declared, not that such a sentence was *bad law*, but that it was *not law*. [1 W. Blackstone, Commentaries on the Laws of England, pp *69, 70 (1765).]

The jurisprudential footing of *Spectrum Health* is therefore both solid and of long standing. And, importantly for purposes of our analysis, its Blackstonian pronouncement lies at the core of the longstanding judicial debate over the proper role of the judiciary generally and the propriety of prospective decision-making specifically. As Justice Scalia stated in *Harper*:

> Prospective decisionmaking is the handmaid of judicial activism, and the born enemy of *stare decisis*. It was formulated in the heyday of legal realism and promoted as a "techniqu[e] of judicial lawmaking" in general, and more specifically as a means of making it easier to overrule prior precedent. . . .
>
> The true *traditional* view is that prospective decisionmaking is quite incompatible with the judicial power, and that courts have no authority to engage in the practice. . . .
>
> [The dissent] asserts that " '[w]hen the Court changes its mind, the law changes with it.' " . . . That concept is quite foreign to the American legal and constitutional tradition. It would have struck John Marshall as an extraordinary assertion of raw power. The conception of the judicial role that he possessed, and that was shared by succeeding generations of American judges until very recent times, took it to be "the province and duty of the judicial department to say what the law *is*," *Marbury v Madison*, 5 US (1 Cranch) 137, 177, 2 L Ed 60 (1803) (emphasis added)—not what the law *shall be*. That original and enduring American perception of the judicial role sprang not from the philosophy of Nietzsche but from the jurisprudence of Blackstone, which viewed retroactivity as an inherent characteristic of the judicial power, a power "not delegated to

---

akin to the announcement of a new rule of law, given the erroneous interpretations set forth in [intervening judicial decisions]." *Pohutski*, 465 Mich at 696.

-14-

pronounce a new law, but to maintain and expound the old one." 1 W Blackstone, Commentaries 69 (1765). Even when a "former determination is most evidently contrary to reason . . . [or] contrary to the divine law," a judge overruling that decision would "not pretend to make a new law, but to vindicate the old one from misrepresentation." *Id*. at 69–70. "For if it be found that the former decision is manifestly absurd or unjust, it is declared, not that such a sentence was *bad law*, but that it was *not law*." *Id*. at 70 (emphasis in original). Fully retroactive decisionmaking was considered a principal distinction between the judicial and the legislative power: "[I]t is said that that which distinguishes a judicial from a legislative act is, that the one is a determination of what the existing law is in relation to some existing thing already done or happened, while the other is a predetermination of what the law shall be for the regulation of all future cases." T Cooley, Constitutional Limitations *91. The critics of the traditional rule of full retroactivity were well aware that it was grounded in what one of them contemptuously called "another fiction known as the Separation of powers." Kocourek, *Retrospective Decisions and Stare Decisis and a Proposal*, 17 ABA J 180, 181 (1931). Prospective decisionmaking was known to foe and friend alike as a practical tool of judicial activism, born out of disregard for *stare decisis*. [*Harper*, 509 US at 105-108 (SCALIA, J., concurring).]

This Court also discussed these competing judicial philosophies in *Lincoln v General Motors Corp*, 231 Mich App 262; 586 NW2d 241 (1998), wherein Judge Whitbeck observed:

As noted by former Justice Moody[31] "[n]otions of retrospectivity and prospectivity have their roots in two diametrically opposed theories of jurisprudence." The first view, widely attributed to Blackstone, is that courts function to discover and declare the law rather than to make it. Therefore, when judges change legal rules, they do not pretend to make a new law, but to vindicate the old one from misrepresentation. For if it be found that the former decision is manifestly absurd or unjust, it is declared, not that such a sentence was *bad law;* but that it was *not law* . . . .[32] Justice Moody observed that, under this view, a law-changing decision, because it is merely a statement of what had always been the "true" law, must of necessity be retroactively applied.[33] A second view asserts that judges not only discover law but *make* law.[34] Under this theory, decisions that change the law should not automatically apply retrospectively. The tension between these two views is evident throughout much of our jurisprudence regarding this subject. . . .

Applying Blackstone's formulation, the interpretation of the [Worker's Disability Compensation Act, MCL 418.101 *et seq*.] in [*Wozniak v General Motors Corp*, 198 Mich App 172, 497 NW2d 562 (1993)] was always the "true law" and it must therefore be given full retroactive effect. [*Lincoln*, 231 Mich App at 307-308, 314 (WHITBECK, J., concurring).]

---

[31] See Moody, *Retroactive application of law-changing decisions in Michigan*, 28 Wayne L R 439, 441 (1982).

[32] 1 Blackstone, *Commentaries on the Laws of England* (3d ed 1884) *69.  See also *Linkletter v Walker*, 381 US 618, 623, n 7; 85 S Ct 1731; 14 L Ed 2d 601 (1965).

[33] Moody, n 31, *supra* at 441.

[34] See Carpenter, *Court decisions and the common law*, 17 Colum L R 593, 594–595 (1917).

---

With this backdrop, it becomes readily apparent that the underpinnings of *Spectrum Health* and *Harper* are one and the same.  That is to say, judicial decisions of statutory interpretation must apply retroactively because retroactivity is the vehicle by which "the law" remains "the law."[15]  As *Spectrum Health* dictates, intervening judicial decisions that may have misinterpreted existing statutory law simply are not, and never were, "the law."[16]  The necessary consequence is that those decisions of this Court that were overruled by our Supreme Court in *Covenant* were not "the law" and thus did not, and do not, afford plaintiff a statutory right to recover PIP benefits directly from an insurer.  Because plaintiff has no such right under the pre-*Covenant* caselaw, and because, as our Supreme Court in *Covenant* determined, plaintiff has no such right under the no-fault act, summary disposition was properly entered in favor of defendants in this case, albeit for reasons other than the pre-*Covenant* rationale given by the trial court.

In essence, we conclude that our Supreme Court in *Spectrum Health* essentially adopted the rationale of the United States Supreme Court in *Harper* relative to the retroactive applicability of its judicial decisions of statutory interpretation "to all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the]

---

[15] We emphasize that our decision is limited to the context of judicial decisions of statutory interpretation.  We need not and do not consider whether the same principles apply in the context of judicial decisions affecting the common law.

[16] We fully appreciate the conundrum faced by litigants who follow and endeavor to conform their behavior to what they legitimately understand to be the guidance and directives of our courts, only to be confronted with a subsequent judicial change of direction that seemingly pulls the rug out from under them.  But we must be true to the law.  The remedy is not to be found in a judiciary that adapts the law as and when it sees fit; such judicial policy-making necessarily creates its own inequities.  Rather, the remedy, if any, is twofold:  (1) adherence to the proper role of the judiciary (such that retroactive application of a judicial decision need never be employed); and (2) in the Legislature.  We offer no opinion on the subject of legislative action insofar as it relates to the issues raised in this case, as that determination is best left to the Legislature.  We do note, however, that healthcare providers, at least in certain circumstances, stand in a far different position than do most other members of our society, because they have been mandated to provide certain services without regard to payment or insurance coverage.  See 42 USC 1395dd.  We therefore encourage the bringing of those concerns to the Legislature, and the Legislature's consideration of them.

announcement of the rule." *Harper*, 509 US at 97. Having so concluded, we invite our Supreme Court to state expressly whether or to what extent it adopts the *Harper* rationale into Michigan state court jurisprudence.[17]

### (C). THE "THRESHOLD QUESTION" AND "THREE-FACTOR TEST"

For the foregoing reasons, we conclude that we need not address the "threshold question" and "three-factor test" that have often been cited in the Michigan caselaw. The Court's holding in *Spectrum Health*, which the Court notably reached without so much as a mention of *Pohutski*, effectively repudiated the application of the "threshold question" and "three-factor test," at least in the context of judicial decisions of statutory interpretation. Even if we were to consider them, however, the result would be unchanged.

First, and for the reasons we have already articulated, we would not get past the threshold question. Plainly and simply, and for the reasons already noted, the law did not change. *Covenant* did not "clearly establish[] a new principle of law," *Pohutski*, 465 Mich at 696, because MCL 500.3112 at no time provided plaintiff with a right of action against defendants, and the intervening caselaw from this Court "never was the law." *Spectrum Health*, 492 Mich at 536. *Covenant* merely recognized that the law as set forth in MCL 500.3112 is and always was the law.

We particularly reach that conclusion under the circumstances of this case because the law at issue concerns the very existence of a right of action. In other words, we are not merely being asked to decide whether a judicial decision of statutory interpretation should be given retroactive effect; we are being asked to decide whether a judicial decision of statutory interpretation *concerning the existence of a right of action* should be given retroactive effect. We conclude that it would be particularly incongruous for us to decide that *Covenant* effected a change in the law such that it should not be applied retroactively, because we would effectively be creating law that does not otherwise exist, and thereby affording to plaintiff a right of action that the Legislature saw fit not to provide. In effect, we would not only be changing the law from that which the Legislature enacted, but in doing so we would be creating a cause of action that does not exist; for the reasons noted in this opinion, that is outside the proper role of the judiciary.[18]

---

[17] Again, as noted, the Court in *Spectrum Health* recognized an exception to the rule. We conclude that the exception is inapplicable in this case, however, because it is premised on parties having made contracts and acquired rights under and in accordance with statutory construction given by the courts of last resort of this State. *Id*. at 536. In this case, by contrast, plaintiff's suit against defendants is premised on the *absence* of any insurance contract, and, in any event, the caselaw on which plaintiff relies in bringing suit was not that of a "court of last resort of this State," i.e., the Supreme Court.

[18] Counsel for plaintiff acknowledged at oral argument that while he could (and did) identify caselaw in which courts had applied judicial decisions of statutory interpretation prospectively,

Were we to advance past the threshold question and consider the three-factor test, the question certainly would become a closer one. But even under pre-*Spectrum Health* caselaw, we are not prepared to conclude that the factors, taken together, would weigh in favor of the prospective-only application of *Covenant*. Again, the three factors to be weighed under *Pohutski* are: "(1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice." *Pohutski*, 465 Mich at 696.

With regard to the first factor, our Supreme Court stated in *Covenant* that the purpose of its decision was to "conform our caselaw to the text of the applicable statutes to ensure that those to whom the law applies may look to those statutes for a clear understanding of the law." While *Pohutski* suggests that such a purpose might favor prospective application, *Pohutski*, 465 Mich at 697, *McNeel* found that a rule of law that is intended to "give meaning to the statutory language" and to "clarify" the state of the law weighs in favor of retroactive application. See *McNeel*, 289 Mich App at 96. This apparent divergence of viewpoint itself highlights what is perhaps the most inherent problem with prospectivity: the law requires consistency, see *Robinson v Detroit*, 462 Mich 439, 463; 613 NW2d 307 (2000), and prospectivity undermines rather than advances that objective. Instead, the law becomes subject to divergent interpretations depending on the particular tribunal that is then interpreting it.

With regard to the extent of reliance on our prior caselaw, there can be no doubt that plaintiff and others have heavily relied on our prior caselaw over the course of many years. We do not in any way seek to diminish that fact or to minimize the negative effects that might be felt by those who relied on pre-*Covenant* decisions. The reliance is real, as are the consequences that flow from it. Yet, "[c]omplete prospective application has generally been limited to decisions which overrule clear and uncontradicted case law." *McNeel*, 289 Mich App at 94 (quotation marks and citation omitted). And while plaintiff argues with some justification that *Covenant* upset "decades of settled expectations" concerning provider lawsuits, the Supreme Court in *Covenant* noted that the cases repeatedly cited in support of this "well-settled" principle generally had not actually litigated the issue of whether a healthcare provider possessed a statutory cause of action for PIP benefits under the no-fault act. *Covenant*, ___ Mich at ___, slip op at 7-10. In fact, *Wyoming Chiropractic Health Clinic* derived from earlier cases that had not directly litigated the right of a healthcare provider to seek PIP benefits from an insurer. *Id*. And, despite allowing healthcare providers to directly claim PIP benefits from insurers, we have also stated that MCL 500.3112 "confers a cause of action on the injured party" and that "the right to bring a personal protection insurance action . . . belongs to the injured party." *Hatcher*, 269 Mich App at 600.

This raises the question of "how reasonable the reliance . . . was." *McNeel*, 289 Mich App at 96. On close inspection, it is less than clear that the state of the law that was overturned by *Covenant* was so "clear and uncontradicted" as to predominate in favor of only prospective application. As in *McNeel*, the mere fact that insurers and healthcare providers may have acted in reliance on the caselaw that *Covenant* overturned is not dispositive of the question of retroactivity; every retroactive application of a judicial decision has at least the potential to upset

___

he was unaware of any such decisions that afforded a right of action where the underlying statute itself did not.

some litigants' expectations concerning their pending suits. *McNeel*, 289 Mich App at 96. And "a return to an earlier rule and a vindication of controlling legal authority" such as the plain language of a statute further supports the conclusion that the overruled caselaw was not "clear and uncontradicted." See *Devillers*, 473 Mich at 587; *Hathcock*, 471 Mich at 484.

Finally, with regard to the administration of justice, we again conclude that the weighing of this factor is at best inconclusive. Plaintiff cites to *Moorhouse v Ambassador Ins Co*, 147 Mich App 412, 422; 383 NW2d 219 (1985), for the proposition that "[i]t is essential to the administration of our legal system that practitioners be able to rely upon well-established legal principles . . . ."[19] But in our judgment, that objective is not furthered by a system of justice that allows the law to ebb and flow at the whim of the judiciary. It is instead furthered, and its legitimacy in the eyes of our society is advanced, by demanding consistency in the law, which can only be attained in perpetuity if judicial decisions applying statutory law as enacted by our Legislature are applied retroactively.

Ultimately, even under pre-*Spectrum Health* caselaw, prospective application of a judicial decision is appropriate only as an "extreme measure," *Hathcock*, 471 Mich at 484 n 98, and in "exigent circumstances," *Devillers*, 473 Mich at 586. Considering (as *Covenant* recognized) that providers have always been able to seek reimbursement from their patients directly, or to seek assignment of an injured party's rights to past or presently due benefits, we do not find a level of exigency that would justify contravening the general rule of full retroactivity.

### (D). CONCLUSION REGARDING RETROACTIVITY

We therefore conclude that *Spectrum Health* controls our decision, and that the application of *Spectrum Health* requires that we apply *Covenant* retroactively to this case. Further, even if we were to consider pre-*Spectrum Health* caselaw, we would conclude that *Covenant* applies retroactively. We therefore affirm the trial court's grant of summary disposition in favor of defendants.

### IV. REMAND TO THE TRIAL COURT

The only remaining question is whether this Court should (as plaintiff requests in the alternative in the event we were to conclude, as we do, that *Covenant* applies to this case) treat the pleadings as amended or remand this case to the trial court to allow the amendment of the complaint so that plaintiff may advance alternative theories of recovery, including the pursuit of benefits under an assignment theory. The Supreme Court in *Covenant* expressly noted that its decision in that case was "not intended to alter an insured's ability to assign his or her right to

---

[19] *Moorhouse* prospectively applied a judicial decision holding that a legal malpractice cause of action is not assignable in Michigan. *Moorhouse*, 147 Mich App at 421-422. There was therefore no underlying statutory law as there is in this case. Moreover, *Moorhouse* relied on *Tebo*, see *id*. at 421, which we conclude was undermined by our Supreme Court's holding in *Spectrum Health*. In any event, *Moorhouse* is not binding on this Court. See MCL 7.215(J)(1).

past or presently due benefits to a healthcare provider." *Covenant*, ___ Mich at ____, slip op at 24, n 40.  We conclude that the most prudent and appropriate course for us to take at this time is to remand this case to the trial court with direction that it allow plaintiff to move to amend its complaint, so that the trial court may address the attendant issues in the first instance.

Affirmed.  Remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Brock A. Swartzle